CLARENCE A. FLINT AND JEANNETTE E. FLINT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Flint v. Commissioner
Docket No. 11836-89
United States Tax Court
T.C. Memo 1991-405; 1991 Tax Ct. Memo LEXIS 438; 62 T.C.M. (CCH) 541; T.C.M. (RIA) 91405; August 19, 1991, Filed *438 Decision will be entered for the respondent for the deficiency and the additions to tax as set forth in the notice of deficiency. Alan R. Herson and David B. Morey, for the petitioners. Maggie Anewalt, for the respondent. DAWSON, Judge. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION This case was assigned to Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PANUTHOS, Special Trial Judge: In his notice of deficiency dated February 24, 1989, respondent determined a deficiency in petitioners' income tax for the taxable year 1984 in the amount of $ 9,488. Respondent also determined additions to tax under section 6653(a)(1) *439 in the amount of $ 474.40 and under section 6653(a)(2) in the amount of 50 percent of the interest due on the deficiency. A few weeks prior to trial, respondent filed a motion for leave to file his first amendment to answer to amended petition. The Court took the motion under advisement. The amendment to answer seeks an increased deficiency in the amount of $ 13,630.52 and increased additions to tax under sections 6653(a)(1) in the amount of $ 681.53 and section 6653(a)(2) in the amount of 50 percent of the interest due on $ 13,630.52 and an addition to tax under section 6661(a) in the amount of $ 5,779.63. Subsequent to trial, respondent filed a motion for leave to amend his answer to conform pleadings to the proof and lodged his second amendment to answer. In these documents respondent relies upon section 6501(e)(1)(A) alleging that the period of limitations is open for 6 years due to an omission from gross income exceeding 25 percent of the gross income stated in the return. The issues for decision are as follows: (1) Whether the period for assessment expired prior to the mailing of the notice of deficiency (i.e., whether the period was extended under section 6501(c)(4) *440 or, in the alternative, if we allow respondent leave to conform his pleadings to proof, whether the period is extended under section 6501(e)(1)(A)). If the period for assessment has not expired, the Court will need to decide: (2) Whether petitioners can substantiate certain expenses relating to cost of goods sold. (3) Whether petitioners are entitled to a loss on the foreclosure of a certain property claimed on their return as a loss on property used in a trade or business. (4) Whether petitioners are entitled to deduct certain legal fees paid in 1984. (5) Whether any part of the underpayment of tax was due to negligence. (6) Whether the Court should permit respondent to amend his answer seeking an increased deficiency and additions to tax. If the Court permits the amended answer to be filed, issues (7) through (9) will need to be resolved: (7) Whether petitioners are entitled to a capital loss in the amount of $ 3,000 relating to the foreclosure of property (related to issue (4), supra) and allowed in the notice of deficiency. (8) Whether petitioners received income from the cancellation of indebtedness upon the foreclosure of property (related to issue (4), supra *441 ). (9) Whether petitioners are liable for increased additions to tax under section 6653(a)(1) and (2) and for an addition to tax under section 6661(a). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners resided in Hemet, California, at the time of filing the petition herein. Petitioner Clarence A. Flint (hereinafter petitioner) was born in Saskatoon, Saskatchewan, Canada in 1940. Petitioner completed 8th or 9th grade. At about the age of 15, he left school and began working at carpentry and construction. Petitioner became involved in construction of homes in Canada in 1955. Petitioners came to the United States as Canadian citizens in 1963. Petitioner was initially involved in furniture construction until the early 1970s when he again became involved in home building. During the 1970s, petitioner worked as a carpenter in construction of a number of homes. Petitioner was not a licensed contractor in California. Petitioner Jeannette Flint worked as a cashier in a drug store and as a receptionist in a beauty shop during the years after she came to the United States. In June 1978, petitioners and Aquila and Janet Foster (petitioner *442 Jeannette Flint's parents) agreed to purchase undivided one-half interests in a certain unimproved lot on California Avenue in Riverside, California (hereinafter the California property or the California house). One-half of the $ 37,000 purchase price was paid by petitioners and one-half was paid by Mr. and Mrs. Foster. In June 1980, Mr. and Mrs. Foster conveyed their interest in the property to petitioners. Petitioners paid the Fosters approximately $ 18,500 for the interest. Payment was not made at the time of the transfer of title, but during years following 1980. In the spring of 1979, petitioner commenced construction of a house on the California property. When complete, the California house consisted of between 3,000 and 4,000 square feet. Petitioner initially expended approximately $ 125,000 to construct the house, including the cost of the land. The house was completed in June 1980. A final inspection and approval by the county occurred on June 25, 1980. Many improvements were made after June 1980. Petitioner expended in excess of $ 50,000 for landscaping in 1981 and 1982, including the construction of corrals. Decorative work was also done inside the house after *443 June 1980. The record is unclear as to what amounts petitioner expended in 1984 for cost of goods sold and other expenses. According to records of the Riverside County Assessor, the improvements on the property amounted to $ 152,590 (as of March 1981). This amount was not based on actual cost but rather on an estimated square footage factor. Petitioner owned other properties which he sold to finance the construction of the California house. One such property was a lot in Meridian which was sold for $ 24,500. Petitioner also sold property at Idyllwild in 1977 or 1978 and received approximately $ 50,000. In September 1980, petitioners borrowed $ 53,717.57 from Transamerica Financial Services (hereinafter Transamerica) for improvements on the California property. The loan was secured by the California property. Petitioners later borrowed $ 165,000 from Charter Mortgage Company (Charter) in November 1980. Although the loan application was with Charter, the loan was made by Oceanside Financial Services, Inc. (Oceanside). The monthly payment on the loan was $ 2,337.50 at an interest rate of 17 percent. Petitioners received $ 81,659.80 of the loan proceeds and the remainder was *444 used to pay off the balance of the Transamerica loan. The Charter/Oceanside loan documents reflected that the loan was for a "personal residence." In a lawsuit filed in 1983 seeking to rescind the loan, petitioners alleged that the loan on the California property was for "personal, family and household purposes." In late 1983, the Superior Court of California found that the loan was for "personal, family or household purposes, and not for a business purpose." The court also found that the loan was secured by security instruments on the borrower's residence. The California house was first listed for sale in June 1980. The listing price was $ 350,000. Petitioners first tried to sell the property without a broker. After a couple of months, the property was listed with a real estate broker, Wright Realtor, Hemet, California. During the next few years, three potential sales fell through due to the difficulty of financing by prospective purchasers. In 1979, petitioners purchased a house on Lela May Avenue (the Lela May house). Petitioners lived in that house until late 1980 when they occupied the California house. They moved into the California house since it was vacant and required *445 upkeep. Petitioners also wanted to avoid vandalism and thought that they could enhance the salability of the California house by living in it. Petitioners moved a limited amount of furniture into the California house and intended to stay there only until it was sold. Petitioners did ultimately move back to the Lela May house at some point following foreclosure of the California property. Petitioner's daughter lived at the Lela May house during the time petitioners resided at the California house. Petitioners considered the Lela May house as rental property while their daughter occupied it. Petitioners' daughter made some of the mortgage payments on the Lela May house. Petitioners were delinquent in the loan payments to Charter/Oceanside. In August 1982, petitioner Jeannette Flint was served with a notice of default. Charter/Oceanside foreclosed on the California property on April 15, 1984. The property was purchased by Jim Hamza. Mr. Hamza allowed petitioners to continue to reside at the house and petitioner did work on the house and grounds for a period of time. Mr. Hamza promised to pay petitioner $ 5,000 for continuing to reside at the property and for additional work. *446 While petitioner was compensated in part for work done and was provided advances from Mr. Hamza for purchases of supplies, petitioner did not receive the $ 5,000 as promised. Upon advice of one of their attorneys, petitioners claimed a homestead exemption on the California house in January 1983. Petitioners also were granted a homeowner's exemption with respect to their real estate taxes on the California property in 1983 and 1984. Petitioners paid legal expenses amounting to $ 4,065 relating to attempts to prevent the foreclosure of the California property. After completion of his involvement with the California house, petitioner worked in construction for other persons. The 1984 Return
The parties stipulated that "The petitioners timely filed their 1984 federal income tax return with the Internal Revenue Service at Fresno California." The copy of the return does not reflect the date it was filed. The handwritten date next to the signature reflects "4-15." On Schedule C of the 1984 return, petitioner listed his business activity as a "carpenter." The Schedule C and adjustments in the notice of deficiency were as follows: Amount Claimed
Adjusted Per Notice
on Return
of Deficiency
Schedule C
Gross receipts
$ 54,800
$ 80,841
Less cost of goods sold
27,700
38,334
Gross income
$ 27,100
$ 42,507
Less deductions:  Bank service charge
$   600
600
Legal fees
4,065
4,665
Net Profit
$ 22,435
$ 41,907
*447 Petitioners also reported $ 175 in interest income. Petitioners also attached a Form 4797 (Supplemental Schedule of Gains and Losses) to their return. On part I of this form, petitioners reported a $ 125,000 loss on the repossession of the California property on April 15, 1984. Petitioners reflected a basis in the property of $ 125,000 and included the following statement: "Sold at MARKET VALUE $ 240,000.00." In part II of the form, petitioners claimed a $ 25,000 loss with the following statement: "$ 25,000.00 For 5 years 1984 -- 1988." The $ 25,000 loss was reported on the Form 1040 as an ordinary loss. OPINION Position of the Parties
Petitioners do not dispute that they omitted gross receipts as determined by respondent. Petitioners argue, however, that they are entitled to a deduction equal to the amount of omitted gross receipts as additional costs of goods sold. Respondent allowed petitioners some additional cost of goods sold as set forth above; however, respondent does not agree that petitioners substantiated a cost of goods sold equal to the omitted gross receipts. Also in issue is the deductibility of legal expenses in the amount of $ 4,065. Respondent concedes *448 that petitioners expended the amount for legal fees; however, respondent does not agree that the expenditure constitutes a deductible expenditure. Respondent also determined a self-employment tax was due with respect to the omitted income. While petitioners dispute this adjustment, the dispute is limited to the question of whether petitioners had omitted income, which in turn is dependent on the question of whether petitioners are entitled to an additional deduction for cost of goods sold. Thus, petitioners concede that the self-employment tax applies to the extent omitted income exceeds cost of goods sold and expenses. Petitioners claimed a $ 25,000 ordinary loss as deductible in 1984. In the notice of deficiency, respondent disallowed the claimed $ 25,000 loss and allowed petitioner a $ 3,000 capital loss. In his first amendment to answer (lodged with the Court), respondent seeks to disallow the capital loss previously allowed in the notice of deficiency. Also in the first amendment to answer (lodged with the Court), respondent alleges that petitioners had an additional unreported taxable gain in the amount of $ 85,798 on the theory that petitioners were relieved of debt *449 on the mortgage on the California property. The debt which was relieved by foreclosure totaled approximately $ 210,798.07. Respondent alleges that the gain should be taxable as a long-term capital gain unless the Court finds that the California property was business property. In such case, respondent argues that the gain would be ordinary income. Respondent also seeks, in his first amendment to answer (lodged with the Court), to assert the addition to tax under section 6661 and increased additions to tax under section 6653(a)(1) and (2). Procedural Issues
Petitioners argue that respondent has failed to establish that the notice of deficiency was mailed prior to the expiration of the 3-year period of limitations pursuant to section 6501(a). In the amended petition, petitioners alleged as follows: "The assessment and collection of the deficiency for 1984 is barred by the applicable statute of limitations." In his answer to amended petition, respondent made affirmative allegations relying upon section 6501(c)(4). Respondent alleged that the 1984 return was filed on July 1, 1985. He further alleged that a timely agreement was executed pursuant to section 6501(c)(4) extending *450 the period for assessment to June 30, 1989. Respondent alleged that the agreement was executed by petitioners on December 10, 1987, and by a representative of the Internal Revenue Service on December 14, 1987. Attached to the amendment to answer is a document purporting to be a copy of the agreement. Respondent concludes in his pleading that since the notice of deficiency was mailed on February 24, 1989, the notice was timely. No reply was filed to the answer, nor was a motion under Rule 37(c) filed. Neither party raised the issue of the expiration of the period for assessment in their trial memoranda or at the trial of this case. Petitioners presented argument for the first time in their posttrial brief. Petitioners argue that respondent has the burden of proof on this issue and respondent has failed to meet his burden. Petitioners point out that under Rule 37(c) respondent's affirmative allegations were deemed denied and thus the only evidence in the record is (1) the stipulation which provides that the 1984 return was timely filed and (2) the fact that the notice of deficiency was mailed on February 24, 1989. Petitioners conclude that we must find that the notice of deficiency *451 was issued more than 3 years after the filing of the return and therefore assessment of the deficiency is barred. Respondent argues that the ultimate burden of persuasion on this issue remains with petitioners. Adler v. Commissioner, 85 T.C. 535, 540 (1985). In this regard respondent argues that petitioners failed to prove (1) the filing date of the return and (2) that the notice of deficiency was mailed more than 3 years after the filing of said return. Respondent also argues that petitioners abandoned the statute of limitations argument by not raising it in their trial memorandum or at trial. As an alternative, respondent filed a motion for leave to conform pleadings to proof and lodged his second amendment to answer to amended petition. Respondent seeks to rely on section 6501(e)(1)(A), arguing that the omitted gross receipts exceeded 25 percent of the gross income reported on the return. Respondent relies on a stipulation wherein petitioners agreed that they received an additional $ 26,041 in gross receipts. Accordingly, respondent argues that section 6501(e)(1)(A) would extend the period of assessment of the tax to 6 years and that under this record *452 it is clear that the notice of deficiency was timely issued within that period. We stated in Adler v. Commissioner, 85 T.C. 535, 540 (1985) as follows: The bar of the statute of limitations is an affirmative defense, and the party raising it must specifically plead it and carry the burden of proof with respect thereto. Rules 39, 142(a). Where the party pleading such issue makes a showing that the statutory notice was issued beyond the normally applicable statute of limitations, however, such party has established a prima facie case. At that point, the burden of going forward with the evidence shifts to the other side, and the other party has the burden of introducing evidence to show that the bar of the statute is not applicable. Where the other party makes such a showing, the burden of going forward with the evidence then shifts back to the party pleading the statute, to show that the alleged exception is invalid or otherwise not applicable. The burden of proof, i.e., the burden of ultimate persuasion, however, never shifts from the party who pleads the bar of the statute of limitations. See Stern Bros. & Co. v. Burnet, 51 F.2d 1042 (8th Cir. 1931), *453 affg. 17 B.T.A. 848 (1929); Concrete Engineering Co. v. Commissioner, 58 F.2d 566 (8th Cir. 1932), affg. 19 B.T.A. 212 (1930); Estate of Williams v. Commissioner, T.C. Memo 1955-321.
The parties stipulated that the 1984 return was "timely filed." Since the return itself does not reflect the date of filing, we accept the parties' stipulation to mean that the return was filed on or before April 15, 1985. The notice of deficiency was mailed on February 24, 1989, which is more than 3 years after the filing of the return. Petitioners therefore established a prima facie case that the assessment of the deficiency was barred by the 3-year statute of limitations, and the burden of going forward is therefore shifted to respondent. While respondent alleged that a request to extend the statute of limitations was executed, such allegation is deemed to be denied, Rule 37, and the document was not made part of the record. Thus respondent failed to prove that the statute of limitations on assessment was extended by agreement under section 6501(c)(4). [2]
*454 Nor do we find that petitioners waived the statute of limitations argument. If petitioners believed that the record was complete to establish their position, it was not their obligation to advise respondent of the defect in the record with respect to respondent's case. Respondent alternatively seeks to rely upon the 6-year statute of limitations under section 6501(e)(1)(A). We must first decide whether to grant leave to allow respondent to amend his answer to conform to the proof. Rule 41(a) provides in part: If the pleading is one to which no responsive pleading is permitted and the case has not been placed on a trial calendar, then a party may so amend it at any time within 30 days after it is served. Otherwise a party may amend a pleading only by leave of Court or by written consent of the adverse party, and leave shall be given freely when justice so requires. * * * Rule 41(b)(1) provides as follows: When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. The Court, upon motion of any party at any time, may allow such amendment of the pleadings *455 as may be necessary to cause them to conform to the evidence and to raise these issues, but failure to amend does not affect the result of the trial of these issues.
Whether a motion seeking amendment should be allowed is within the sound discretion of the Court. Commissioner v. Estate of Long, 304 F.2d 136 (9th Cir. 1962), affg. unreported orders of this Court. In deciding the justice of a proposed amendment, we must examine the particular circumstances in the case. The exercise of our discretion must be controlled by sound reason and fairness. Law v. Commissioner, 84 T.C. 985, 990 (1985). If there is evidence of surprise or substantial disadvantage to the opposing party, then the motion to amend should be denied. Ferrill v. Commissioner, 684 F.2d 261, 265 (3d Cir. 1982), affg. per curiam a Memorandum Opinion of this Court; Chanik v. Commissioner, T.C. Memo 1972-174, affd. per curiam 492 F.2d 1182 (6th Cir. 1974). In his motion, respondent seeks to allege an additional affirmative defense to petitioners' statute of limitations argument. Petitioners initially placed the statute *456 of limitations in issue. While the issue was not argued at trial, petitioners have since made it clear that they consider the statute of limitations to be in issue. We believe that it is appropriate to allow respondent to amend his pleading to conform to the proof. Evidence relating to this issue is in the record, the parties having filed a substantial stipulation of facts, and respondent seeks to conform his pleadings to the existing record. We do not believe amending the pleading will prejudice petitioners. Petitioners' failure to advise respondent or the Court that the statute of limitations was in issue at the trial could have led respondent to believe that no further proof or pleadings were required and that petitioners were satisfied with respondent's affirmative allegations. Petitioners cannot now reasonably claim unfair surprise when they pleaded the statute of limitations and failed to mention the issue before or during trial. Based on the foregoing, we exercise our discretion in favor of respondent and will grant leave to permit him to file his second amendment to answer to amended petition. We now consider whether the statute of limitations is extended under section *457 6501(e)(1)(A). That section provides as follows: (A) General rule. - -If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph -- (i) In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and (ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.
Respondent bears the burden of proof as to whether petitioners omitted from their 1984 Federal income tax return an amount in excess of 25 percent *458 of the amount of gross income stated in the return. Reis v. Commissioner, 1 T.C. 9 (1942), affd. 142 F.2d 900 (6th Cir. 1944). The parties stipulated that petitioners received and failed to report gross receipts in the amount of $ 26,041. The reported gross receipts on the Schedule C were $ 54,800. Other income reflected on the return was $ 175 in interest income. Petitioners also claimed a $ 25,000 ordinary loss relating to the repossession (foreclosure) of the California property. The amount of gross income stated on the return is the gross receipts reflected on the Schedule C ($ 54,800) plus the interest income ($ 175). Schneider v. Commissioner, T.C. Memo 1985-139. While petitioners reported the transaction (foreclosure of the California property) on a schedule attached to the return, it was reflected as a loss transaction. The foreclosure is not related to the omitted gross receipts which have been stipulated. Accordingly, there was no disclosure of the omitted receipts within the meaning of section 6501(e)(1)(A)(ii). Estate of Fry v. Commissioner, 88 T.C. 1020 (1987). Thus, the stipulated *459 omitted gross receipts must be taken into account in determining whether the exception of section 6501(e) applies. Sec. 6501(e)(1)(A)(ii). Since the amount of omitted income ($ 26,041) exceeds 25 percent ($ 13,744) of the amount of gross income stated in the return ($ 54,975), the requirements of section 6501(e)(1)(A) are satisfied, and we hold that the assessment of a deficiency for 1984 is not barred. It is clear that the notice of deficiency was mailed within 6 years of filing the return. The 1984 return would, at the earliest, be considered filed as of April 15, 1985. Sec. 6501(b)(1). The notice of deficiency was mailed on February 24, 1989. Thus, the notice of deficiency is timely. Cost of Goods Sold
In an attempt to substantiate additional cost of goods sold, petitioners presented numerous canceled checks and testimony concerning expenditures made in 1984. Petitioners did not present receipts or invoices nor did they present testimony from third parties. While there is no doubt that some of the submitted canceled checks represent cost of goods sold, other checks appeared to represent personal, nondeductible expenditures. Respondent allowed petitioners an additional *460 amount for cost of goods sold. Petitioners initially reported cost of goods sold on their 1984 return in the amount of $ 27,700. [3] After respondent determined that the gross receipts should be increased by $ 26,041 (from $ 54,800 reported on the return to $ 80,841 determined in the notice of deficiency), petitioners alleged that their cost of goods sold should be increased in the same amount. Respondent allowed petitioners cost of goods sold in the amount of $ 38,334 ($ 27,700 claimed on the return and an additional $ 10,634). Petitioners now claim entitlement to a total cost of goods sold in the amount of $ 64,375 ($ 38,334 allowed and $ 26,041 to offset the increased gross receipts). *461 Petitioners have the burden of proof. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Petitioners have failed to present sufficient evidence that the testimony and canceled checks do not represent amounts previously allowed to petitioners. Petitioners' records were incomplete and their testimony was not entirely consistent with the records that did exist. Petitioners have failed to prove that they are entitled to a deduction for additional cost of goods sold in an amount greater than that allowed by respondent. Loss on Foreclosure of Property
Petitioner argues that he was in the trade or business of building and selling homes and therefore the loss on the foreclosure of the California property is an ordinary loss. In the notice of deficiency, respondent allowed petitioners a capital loss. In his first amendment to answer (lodged with the Court), respondent alleges that petitioners are not entitled to any loss since the California property was petitioners' personal residence. Section 165(a) provides that there shall be allowed as a deduction any loss sustained during the taxable year. In the case of an individual, the deduction under section *462 165(a) is generally limited to (1) losses incurred in a trade or business, (2) losses incurred in a transaction entered into for profit, or (3) losses resulting from a casualty or theft. Sec. 165(c). If the loss results from the sale or exchange of a capital asset, then the loss will be allowed only to the extent permitted by sections 1211 and 1212. Sec. 165(f). Under section 1221, the term "capital asset" includes all property held by the taxpayer (whether or not connected with his trade or business), but does not include property falling within several enumerated categories, including the following two categories: (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; or (2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in his trade or business.
If the California property does not fall within either of these provisions, it is *463 a capital asset to petitioners and the loss resulting from the disposition of the property must be reported subject to the rules and limitations applicable to capital losses under sections 1211 and 1212. Sec. 165(f). The question of whether property is held for sale to customers in the ordinary course of the taxpayer's trade or business is purely factual and its resolution depends on the facts and circumstances of each case. McManus v. Commissioner, 65 T.C. 197, 211 (1975), affd. 583 F.2d 443 (9th Cir. 1978). We must differentiate between "profits and losses arising from the everyday operation of a business," Corn Products Co. v. Commissioner, 350 U.S. 46, 52, 100 L. Ed. 29, 76 S. Ct. 20, (1955), and "the realization of appreciation in value accrued over a substantial period of time," Malat v. Riddell, 383 U.S. 569, 572, 16 L. Ed. 2d 102, 86 S. Ct. 1030 (1966), quoting Commissioner v. Gillette Motor Transport, Inc., 364 U.S. 130, 134, 4 L. Ed. 2d 1617, 80 S. Ct. 1497 (1960). The Court has used several factors to assist in making this determination: (1) the nature and purpose of the acquisition of the property and the duration of the ownership; (2) the extent and nature of *464 the taxpayer's efforts to sell the property; (3) the number, extent, continuity and substantiality of the sales; (4) the extent of subdividing, developing and advertising to increase sales; (5) the use of a business office for the sale of the property; (6) the character and degree of supervision or control exercised by the taxpayer over any representative selling the property; and (7) the time and effort the taxpayer habitually devoted to the sales. [McManus v. Commissioner, 65 T.C. at 211, quoting United States v. Winthrop, 417 F.2d 905, 910 (5th Cir. 1969).]
Petitioners purchased the California lot with the intent to build a house and sell the house and lot. In this regard, petitioners temporarily moved out of the Lela May house to the California property to enhance the prospects of selling it. Petitioners attempted to sell the property as soon as the construction of the house was completed. However, rising interest rates limited the number of potential buyers. Despite listing the property with a real estate broker, petitioners were unable to sell the property. A few potential sales failed to be completed when potential buyers were *465 unable to obtain financing. While petitioner claims to be in the business of building and selling homes, there is little evidence of the extent and continuity of this activity. Although there is some evidence of involvement with other real estate properties in years prior to 1984, little evidence of a regular course of conduct of building and selling homes was provided. There was testimony concerning two lots which petitioner sold in 1977 or 1978 to help finance the construction of the California house. Petitioners also purchased the Lela May house in 1979 as their personal residence. Other than these limited transactions, there is no specific evidence regarding petitioner's activity of building and selling homes. In this regard, it is noted that petitioner listed his occupation on the return as a carpenter and he was not a licensed contractor in California. While we do not question that petitioner purchased the California lot to build and sell a house, this activity appears to have been an isolated event. There is no evidence of similar activity in prior years, and petitioner by his own testimony indicated that he discontinued any such activity in years after 1984. Based *466 on the foregoing, we find that the California property was not held for sale in the ordinary course of petitioner's business. Property cannot be classified as stock in trade or as property subject to inventory unless it is held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Wood v. Commissioner, 16 T.C. 213, 227 (1951). Therefore, the California property cannot be stock in trade or inventory to petitioners. Additionally, there is no evidence that the real property was used in a trade or business by petitioners. Instead, the property was held as an investment, i.e., for the production of income. Consequently, the California property is a capital asset to petitioners. Thus, the loss is governed by section 165(f) and is treated as a loss on the sale of a capital asset. Respondent's determination is sustained. Legal Fees
Respondent agrees that petitioners expended $ 4,065 for legal fees. The legal expenses were related to petitioner's defense of the foreclosure of the California property. We have found that petitioners held the California property as an investment for the production of income. Section *467 212(1) and (2) provides for deduction of ordinary and necessary expenses for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. Attorney's fees paid for these purposes are deductible. Bagley v. Commissioner, 8 T.C. 130, 134 (1947). However, to the extent the payment of attorney's fees is considered a capital expenditure, amounts paid must be added to the cost basis of the capital asset. Sec. 1.212-1(k), Income Tax Regs.; Woodward v. Commissioner, 397 U.S. 572, 25 L. Ed. 2d 577, 90 S. Ct. 1302 (1970). Expenses paid or incurred in defending or perfecting title to property are capital expenses and are thus nondeductible. Sec. 1.212-1(k), Income Tax Regs. Respondent did not argue that any part of the legal expenses was a capital expenditure. See United States v. Gilmore, 372 U.S. 39, 52, 9 L. Ed. 2d 570, 83 S. Ct. 623 (1963). Rather, his disallowance of the expenditures appears to be based on his conclusion that the California house was petitioners' personal residence, a position which he raises in his first amendment to answer (lodged with the Court). Expenses relating to the maintenance or preservation *468 of a taxpayer's personal residence are not deductible. Sec. 161; sec. 1.212-1(h), Income Tax Regs.
Since we have found that the California house was held as an investment, we implicitly reject respondent's position. We must instead decide whether the legal expenditures relating to the foreclosure action come within the meaning of "conservation" and "maintenance" as those terms appear in section 212(2). As noted above, respondent did not address this argument at trial, on brief, or in any other pleading filed with this Court. Petitioners at least addressed the issue in their brief, but they offered nothing more than their self-serving conclusions to assist the Court in the resolution of this question: The parties have stipulated that Petitioners deducted the $ 4,065 in legal expenses in an attempt to stop the foreclosure of the house. At trial, Respondent conceded that the $ 4,065 was actually paid. Since, as shown elsewhere in this Argument, the property was either business or investment property, the legal expenses incurred to prevent its foreclosure are properly deductible.
We have had the occasion to interpret the terms appearing in section 212(2) under facts similar *469 to those of petitioners' case. Expenses incurred in defending or postponing foreclosure actions are capital in nature since the primary purpose of such litigation is the defense of the legal title. Boyajian v. Commissioner, T.C. Memo 1970-78. They cannot be considered as expenses incurred in the maintenance or conservation of the property, for those terms seem to refer to actions taken with regard to the property itself, such as safeguarding or upkeep, rather than to a taxpayer's retention of its ownership. United States v. Gilmore, 372 U.S. 39, 44, 9 L. Ed. 2d 570, 83 S. Ct. 623 (1963). Thus, we sustain respondent's disallowance of the deduction claimed for legal expenses relating to the California property foreclosure action. Amendment to Answer
Approximately 5 weeks prior to trial, respondent filed a motion for leave to file a first amendment to his answer to the amended petition. We took the motion under advisement and permitted the parties to present evidence with respect to the issues contained in the first amendment to answer (lodged with the Court). In the amendment, respondent seeks to raise issues (7) through (9), supra. [4] Petitioners object and *470 argue that respondent, in his notice of deficiency, treated the property as investment property by allowing petitioners a capital loss of $ 3,000 and thus the question of basis was not in issue. Petitioners argue that to now require them to establish basis would unfairly prejudice them. We have earlier in this opinion discussed amendments to pleadings in relation to the statute of limitations issue. We will not repeat that discussion here. We believe that this motion to amend is not timely or supported by good reason, and, if granted, would be prejudicial to the opposing party. Chanik v. Commissioner, supra.The year in issue in this case is 1984. The notice of deficiency was issued *471 in February 1989. A timely petition was filed. In changing his position, we believe that respondent failed to exercise due diligence, raising additional issues and seeking an increased deficiency only a few weeks prior to trial. Commissioner v. Estate of Long, supra.
Respondent suggests that the question of basis was always at issue in this case. We do not agree. When petitioners were allowed a capital loss on the foreclosure of the California property in the notice of deficiency, petitioners could have reasonably concluded that the only issue was the nature of the loss. Respondent attempts to argue that the allowance of a $ 3,000 capital loss was an error and that it is separate and distinct from the disallowed $ 25,000 loss claimed by petitioners. A reasonable reading of the notice of deficiency in this case is that respondent converted the claimed loss from an ordinary loss to a capital loss. Murfin v. Commissioner, T.C. Memo 1977-97. The issue of whether petitioners received income from the cancellation of indebtedness upon the foreclosure of the California property is also a basis question. This issue was not raised in the *472 notice of deficiency. For the same reasons set forth above, we believe that basis was not an issue in this case and respondent's late attempt to place basis in issue unduly prejudices petitioners. Accordingly we will deny respondent's motion for leave to amend his answer seeking an increased deficiency. We note that even if we had allowed respondent's first amendment to answer to be filed, the result would not be any different. Since respondent seeks an increased deficiency in his amended answer, he would have the burden of proof. Rule 142(a); McSpadden v. Commissioner, 50 T.C. 478, 492-493 (1968); Murfin v. Commissioner, supra.We have previously sustained respondent's determination with respect to the nature of the loss and further found that the property was a capital asset held as investment property. Thus, there is no question but that petitioners are entitled to the $ 3,000 capital loss determined in the notice of deficiency. Our decision on this issue is not changed by the fact that petitioners claimed a homestead exemption, and that the mortgage documents reflected the California house as petitioners' personal residence. *473 It is undisputed that petitioners resided at the California house; however, as we have previously indicated, we are satisfied from the entire record that petitioners built this house for resale and made good faith attempts to sell it. We are not bound, for tax purposes, by the designation of the property for purposes of financing or for purposes of California real property taxes. Thus, to this extent, the first issue claimed by respondent in his amendment would not be sustained in any event. With respect to the issue of purported gain received by petitioners, respondent alleges that, upon the foreclosure, petitioners were relieved of liabilities in excess of basis; thus petitioners had unreported taxable gain. Danenberg v. Commissioner, 73 T.C. 370, 380-382 (1979). The only evidence of basis presented by respondent was the records of the County Assessor's Office and testimony of an employee of that office. It is noted that this evidence does not represent cost basis but rather an estimate of cost based on statistics of the assessor's office. As pointed out by petitioners, even accepting this evidence would reflect a cost basis of $ 152,590, not including *474 the cost of the land. When the cost of the land is added into this figure, it is clear that petitioners' cost basis exceeded the debt. Thus, even if we had permitted respondent's amendment to answer to be filed, respondent would not have prevailed on this issue. [5]
Addition to Tax for Negligence
Respondent determined an addition to tax for negligence under section 6653(a)(1) and (2). The burden of proof is on petitioners to establish that they were not negligent. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Petitioners have failed in their burden of proof. They failed to adequately explain why they omitted substantial amounts of gross receipts from their return; and their records relating to expenses were inadequate. Therefore, respondent's determination is sustained. *475 To reflect the foregoing, Decision will be entered for the respondent for the deficiency and the additions to tax as set forth in the notice of deficiency. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. On June 5, 1991, respondent filed a motion to reopen the record to put the alleged extension agreement into evidence. Petitioners objected to the motion. Based on the discussion that follows concerning sec. 6501(e)(1)(A), the motion will be denied as moot.↩
3. The issues relating to the loss on the foreclosure and the deduction of legal fees relate, at least in part, to whether petitioner was in the trade or business of building homes (see discussion, infra↩). While not raised by the parties, it would follow that petitioner would not be entitled to cost of goods sold if he were not in a trade or business. However, since there has been a partial allowance of these expenses by respondent, and petitioner has failed to substantiate any additional cost of goods sold, we need not discuss this question any further.
4. The issues raised in the amendment to answer to amended petition are (1) disallowed $ 3,000 capital loss previously allowed in the notice of deficiency; (2) gain on foreclosure to the extent of forgiveness of debt in excess of basis; and (3) increased additions to tax and addition to tax under sec. 6661.↩
5. The third issue, relating to additions to tax, raised in the first amendment↩ to answer, would also be resolved in favor of petitioners based on a finding on the first two issues set forth in the amended answer.