T.C. Memo. 2002-173

UNITED STATES TAX COURT

JEFFREY AND KAREN WINTER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5432-00.                    Filed July 22, 2002.

<u>Craig M. Hunt</u>, for petitioners.

<u>Kathryn K. Vetter</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined a deficiency of $40,092 in petitioners' joint 1994 Federal income tax.  The issue for decision is whether petitioners may deduct or must capitalize legal and consulting fees incurred in maintaining a lawsuit against the seller of a hotel that they had previously purchased.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Gold Run, California, at the time they filed their petition.

In 1990, petitioners were interested in finding investment property. Petitioners saw a brochure advertising the Truckee Hotel, located in Truckee, California, near Lake Tahoe, for the price of $1.2 million. The brochure included some financial and room rental information regarding the hotel. At that time, the Truckee Hotel was owned by the Meglin Hotel Partnership (MHP). Gerhard Meglin (Mr. Meglin) was the general partner of MHP and owned an 82-percent interest in the partnership.

On February 20, 1991, petitioners executed a "Commercial Real Estate Contract and Receipt for Deposit" (real estate contract) offering to purchase the Truckee Hotel for $1.2 million. Mr. Meglin made a counteroffer, and the parties ultimately agreed on the terms of the sale.[1] The real estate contract required Mr. Meglin to provide income and expense statements for the hotel for 1989, 1990, and 1991. The statements were to be based on records maintained in the ordinary course of business and used in the computation of Federal and State income tax returns. The statements were to be prepared

---

[1]The purchase price remained at $1.2 million.

according to generally accepted accounting principles to provide adequate, detailed information to the buyer and were to include applicable tax returns. During escrow, Mr. Meglin provided petitioners with income and expenses statements for the Truckee Hotel for 1988, 1989, and 1990. He also provided MHP's partnership returns for 1988 and 1989 but not for 1990 because that return had not yet been filed. Petitioners did not hire an appraiser to look at the property or anyone who was familiar with the hotel industry to look at the books of the hotel during this time.

Petitioners noticed that there were inconsistencies between the financial information contained in the advertising brochure and the financial information provided by Mr. Meglin during escrow. For example, the advertising brochure overstated the 1988 and 1989 net income. Additionally, although the income and expense statements provided included no repair expenses, MHP had claimed expenses for repairs on its partnership tax returns. After corresponding with Mr. Meglin concerning the inconsistencies, petitioners ultimately proceeded with the purchase on the terms previously agreed to by the parties. The sale of the Truckee Hotel to petitioners closed on April 4, 1991. Petitioners paid a portion of the purchase price in cash and executed a promissory note for the balance of $870,000.

Approximately 1 year after petitioners' purchase of the Truckee Hotel, the county hotel tax assessor asked petitioners for a "Revenue Forecast" of their room revenues and room occupancy taxes that the county could use for budgeting purposes. Petitioners obtained copies of transient occupancy tax returns that had previously been filed for the hotel. Petitioners discovered that the gross receipts listed on the returns were less than those shown on the documents provided by Mr. Meglin during escrow. The actual gross receipts received by petitioners from operating the hotel were less than they had anticipated.

On May 10, 1993, petitioners filed a complaint for damages in the Superior Court of the State of California against MHP and Mr. Meglin alleging breach of contract, intentional misrepresentation, and negligent misrepresentation. Petitioners alleged that Mr. Meglin breached the real estate contract by providing petitioners with false, incorrect, or incomplete financial statements showing that the income of the hotel was greater than it was, which proximately resulted in petitioners' suffering damages for the difference between the purchase price and actual value of the hotel at the time of sale and the difference between the reasonable projected profit of the hotel and the actual income. Petitioners further alleged that Mr. Meglin intentionally misrepresented the income and expenses of the hotel, which induced petitioners to purchase the hotel for a

price in excess of its worth and caused them to suffer damages for this difference in value and the difference between the represented income of the hotel and the actual income of the hotel. Finally, petitioners alleged that Mr. Meglin negligently misrepresented that the Truckee Hotel had the income and expenses for 1989, 1990, and 1991, as listed in the income and expense statements, which proximately caused petitioners to purchase the hotel for a price in excess of its worth and suffer damages for the differences between the purchase price and actual value of the hotel and the represented income and the actual income of the hotel.

The matter was referred to nonbinding arbitration, and a hearing was held on April 14, 1994. During arbitration, petitioners sought the following damages: (1) $612,000 for the difference between the purchase price and the actual value of the property at the time of sale; (2) $343,437.27 for lost profits based on the financial information provided by Mr. Meglin; (3) $338,000 for amounts reasonably expended in renovation of the hotel based on Mr. Meglin's representations; (4) attorney's fees and costs; and (5) punitive and exemplary damages. The arbitrator found that the income represented by Mr. Meglin in the income and expense statements was accurate but that the representations made regarding operating expenses were careless at best and grossly negligent at worst. The arbitrator found

that although petitioners reasonably relied on Mr. Meglin's representations, they failed to prove by a preponderance of the evidence that they sustained damages as a direct result of the breach of contract or misrepresentations. The arbitrator concluded that petitioners were not entitled to any damages for a loss of value of the property because petitioners did not meet their burden of showing that the alleged loss of value was a proximate and direct result of Mr. Meglin's misrepresentations.

Petitioners decided to proceed with litigation, and a trial was scheduled for July 1994. In June 1994, petitioners hired Arthur Gimmy International to prepare an appraisal report for the Truckee Hotel. The stated purpose of the appraisal was "to estimate the fair market value of the whole property on the date of the sale as well as the investment value of the estate sold subject to pre-existing financing." The report stated that the value of the property at the time of the sale was $800,000.

In July 1994, the parties to the litigation entered into a mutual release and settlement agreement. Under the terms of the agreement, Mr. Meglin agreed to pay petitioners the sum of $271,473.95 by releasing them from $271,473.95 of the amount owed under the terms of the promissory note executed in connection with the sale of the hotel.

Petitioners paid legal and consulting fees in connection with the lawsuit against MHP and Mr. Meglin. On the Schedule C,

Profit or Loss From Business, attached to their 1994 Form 1040, U.S. Individual Income Tax Return, petitioners deducted $82,971 for legal and professional services and $17,712 for consulting. These amounts included costs for legal counsel, accounting work, and the appraisal.

Respondent's examination of petitioners' 1994 return commenced in January 1997. On March 3, 2000, respondent issued petitioners a notice of deficiency determining that petitioners' deductions for legal and consulting fees were not deductible because the fees were incurred in connection with the establishment of the purchase price of the Truckee Hotel.

OPINION

The issue for decision is whether legal and consulting fees incurred in maintaining a lawsuit against a seller of property are deductible as ordinary and necessary business expenses under section 162.[2] Respondent contends that the legal and consulting fees must be capitalized pursuant to section 263(a) because they arose out of, and were incurred in connection with, petitioners' acquisition of the Truckee Hotel, a capital asset.[3] Petitioners argue that capitalization is not required because: (1) The fees were postacquisition expenditures not related to the purchase of

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

[3]Petitioners do not dispute that the Truckee Hotel was a capital asset.

the hotel; (2) the origin of the claim was not the purchase agreement; and (3) acquisition costs are required to be capitalized only when a new asset is acquired or the costs extend the life or increase the value of the asset.

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving the entitlement to any deduction claimed.[4] INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Section 162(a) allows a deduction for ordinary and necessary business expenses paid or incurred during the taxable year in connection with the carrying on of a trade or business. Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352 (1971). Expenses incurred in defending a business and its policies from attack are generally deductible as ordinary and necessary business expenses. E.g., Commissioner v. Tellier, 383 U.S. 687 (1966); Commissioner v. Heininger, 320 U.S. 467 (1943); Am. Stores Co. & Subs. v. Commissioner, 114 T.C. 458 (2000). On the other hand, no current deduction is allowed for capital

---

[4]In certain circumstances, if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the proper tax liability, sec. 7491 places the burden of proof on the Secretary. Sec. 7491(a). Sec. 7491 is effective with respect to court proceedings arising in connection with examinations commencing after July 22, 1998. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727. The examination in this case commenced in January 1997; thus, sec. 7491 is not applicable.

expenditures.  Sec. 263(a); INDOPCO, Inc. v. Commissioner, supra at 83.

"A particular cost, no matter what its type, may be deductible in one context but may be required to be capitalized in another context."  Am. Stores Co. & Subs. v. Commissioner, supra at 469.  An expense that might otherwise qualify as currently deductible must be capitalized when it:  (1) Creates or enhances a separate and distinct asset; (2) produces a significant future benefit; or (3) is incurred in connection with the acquisition of a capital asset.  Lychuk v. Commissioner, 116 T.C. 374, 385-386 (2001) (and cases cited therein).

Capital expenditures are not limited to the actual price that the buyer pays to the seller for the asset but include the payment of legal, brokerage, accounting, appraisal, and other ancillary expenses related to the asset's acquisition.  Id. at 389.  Whether legal costs are incurred in connection with the acquisition of a capital asset depends on whether the origin of the claim litigated is the process of the acquisition itself.  Woodward v. Commissioner, 397 U.S. 572, 577-578 (1970); Berry Petroleum Co. & Subs. v. Commissioner, 104 T.C. 584, 618-619 (1995), affd. without published opinion 142 F.3d 442 (9th Cir. 1998).  Under the origin of the claim test, the nature of the transaction out of which the expenditure in controversy arose governs whether the item is a deductible expense or a capital

expenditure, regardless of the payor's motives in making the payment.  Woodward v. Commissioner, supra at 578; Am. Stores Co. & Subs. v. Commissioner, supra at 470.

Petitioners contend that the legal and consulting fees were not incurred in connection with the acquisition of the Truckee Hotel and should be allowable as a current deduction. Petitioners emphasize that the lawsuit did not begin until 2 years after they purchased the hotel, and the settlement was not reached until 3 years after the purchase.  Petitioners claim that Mr. Meglin did not have any cash resources, and their only recourse available was the reduction of the purchase price. Petitioners maintain that the adjustment of the purchase price is not determinative because all facts and circumstances must be considered.

The fact that legal costs are incurred after a capital asset is acquired does not necessarily mean that the costs were not incurred in connection with the acquisition of the asset.  In United States v. Hilton Hotels Corp., 397 U.S. 580, 584 (1970), the Supreme Court noted that the prior passage of title in the underlying stock acquisition was "a distinction without a difference" in deciding whether costs of litigation arose out of the process of acquisition.  This Court reached a similar result in Am. Stores Co. & Subs. v. Commissioner, supra (legal fees incurred in defending against antitrust suit filed after stock

purchase were capital expenditures because they arose out of, and were incurred in connection with, acquisition of stock). See also Berry Petroleum Co. & Subs. v. Commissioner, supra (costs incurred in defending lawsuit filed after merger were capital expenditures because lawsuit had its origins in the process of acquisition culminating in the merger); Wagner v. Commissioner, 78 T.C. 910 (1982) (legal fees incurred by seller of stock to defend against lawsuit by purchaser were capital expenditures because the origin of the claim was the sale); Redwood Empire Sav. & Loan Association v. Commissioner, 68 T.C. 960 (1977) (amount paid to settle lawsuit brought by former owners of property, and legal fees incurred in connection therewith, were capital expenditures), affd. 628 F.2d 516 (9th Cir. 1980).

In the instant case, petitioners sought damages from MHP and Mr. Meglin related to the purchase of the Truckee Hotel. During arbitration, petitioners sought specific damage amounts for the difference between the purchase price and the actual value of the hotel, lost profits, and renovation costs. During the course of litigation, petitioners had an appraisal done to determine the fair market value of the property as of the date of purchase. The appraisal indicated that petitioners paid a price substantially in excess of the fair market value. As part of the release and settlement agreement, Mr. Meglin agreed to reduce the amount owed on the promissory note for the hotel by $271,473.95;

thus, the lawsuit essentially resulted in a redetermined purchase price for the hotel.  Overall, the evidence reflects that the legal and consulting fees were incurred in connection with the acquisition of the hotel and were directly related to the purchase price.

Petitioners argue that the legal and consulting fees originated from the misrepresentations made by Mr. Meglin as to the expected average annual income of the hotel and were not related to the purchase of the hotel.  Petitioners represented during their lawsuit against MHP and Mr. Meglin that they were seeking damages to recover the difference between the purchase price and the fair value of the hotel, as well as lost profits.  Petitioners ultimately settled their lawsuit in exchange for the discharge of a portion of the amount owed under the purchase agreement.  The evidence indicates that the legal and consulting fees incurred were a result of petitioners' ultimate desire to recover the amount they felt they had overpaid to purchase the hotel.  Thus, the origin of the claim in this case was the purchase of the hotel.[5]

---

[5]If petitioners had sought and recovered damages solely on the basis of lost profits incurred in reliance on Mr. Meglin's misrepresentations, then it appears that such damages might constitute ordinary income and the legal fees incurred in recovering the damages might not be directly related to the acquisition of a capital asset.  However, petitioners' own representations in the lawsuit against MHP and Mr. Meglin, as well as their representations in this proceeding, indicate that

(continued...)

Petitioners' reliance on <u>Freeland v. Commissioner</u>, T.C. Memo. 1986-10, is misplaced. In that case, the taxpayers incurred litigation expenses in a wrongful foreclosure action resulting from the taxpayers' declaration of default on a promissory note, their exercise of an option to accelerate installments, and their initiation of foreclosure proceedings. Neither party to the litigation was seeking to adjust the purchase price of the sales agreement; rather, the purpose of the foreclosure action was to move title to the property from one party to another. We found that the kind of transaction out of which the litigation arose was the foreclosure action, not the original acquisition of the property. However, because the taxpayers ultimately were the successful bidders at the foreclosure sale, we held that all of their litigation expenses were attributable to the reacquisition of title and were not currently deductible. The instant case is distinguishable because petitioners incurred legal fees maintaining a lawsuit to recover damages from Mr. Meglin for misrepresentations which caused petitioners to pay an inflated price for the hotel.

---

[5](...continued)
they sought and recovered damages to compensate them for the difference between the purchase price of the hotel and the fair market value of the hotel at the time of sale. Petitioners have made no attempt in the instant case to allocate the $271,473.95 reduction in the amount owed under the promissory note among the difference between purchase price and actual value of the hotel, lost profits, and renovation costs.

Unlike the taxpayers in Freeland, the kind of transaction out of which the litigation arose was petitioners' original acquisition of the hotel, and the litigation essentially resulted in a reduced purchase price for the hotel.

Finally, petitioners claim that acquisition costs are only required to be capitalized when a new asset is acquired or the costs extend the life or increase the value of the asset. Petitioners contend that because the Truckee Hotel was substantially overvalued at the time of purchase and its capitalized value remained substantially in excess of its fair market value after the settlement agreement, there was no increase in the life or value of the hotel as a result of the litigation.

We recently rejected the argument that acquisition costs are capitalizable only if they create or add value to a capital asset. In Lychuk v. Commissioner, 116 T.C. at 413-414, we stated:

> we disagree with * * * [the taxpayers] that acquisition costs are capitalizable under section 263(a) only if they create or add value to a capital asset. In Dustin v. Commissioner, 467 F.2d 47, 49-50 (9th Cir. 1972), affg. 53 T.C. 491 (1969), the taxpayer was a shareholder of an S corporation (Capitol) that agreed to acquire the stock of a company that owned and operated radio station KGMS. In 1961, Capitol incurred $12,460 of legal, engineering, and accounting fees in connection with the transfer to Capitol of control of station KGMS' radio-broadcasting license. The taxpayer deducted his proportionate share of these expenses, and the Commissioner disallowed the deduction asserting that the expenses were capital expenditures. The

taxpayer argued in this Court that he could deduct
$10,960 of the expenses because they were attributable
to a hearing held by the Federal Communications
Commission on this matter and did not add any value to
the acquired stock.  We disagreed with the taxpayer
that any of these amounts were currently deductible.
On appeal, so did the Court of Appeals for the Ninth
Circuit.  According to that court: "The expenditures
connected with the acquisition of the broadcast license
were no less capital in character because they did not
themselves contribute additional and specific financial
value to the license being sought.  The important fact
is that the expenditures were made for the purpose of
acquiring a capital asset." * * * [Fn. ref. omitted.]

We noted that the test for capitalization does not hinge on the

amount of value added to property but looks at the nature of the

expense itself.  Id. at 414.  We concluded that "When the nature

of an expenditure bears a direct relation to the acquisition of a

capital asset * * * the expenditure must be capitalized."  Id.

Petitioners acquired a capital asset.  Petitioners

subsequently discovered that they paid more for the asset than it

was worth.  Petitioners initiated a lawsuit against MHP and Mr.

Meglin and sought to recover damages on the grounds that

misrepresentations by Mr. Meglin had caused them to pay more than

the hotel was worth.  Petitioners and Mr. Meglin eventually

entered into a release and settlement agreement whereby

petitioners' obligation under the promissory note executed for

the purchase of the hotel was decreased by $271,473.95.[6]  On the basis of the evidence in the record, we find that the legal and consulting fees arose out of, were incurred in connection with, and were directly related to, the acquisition of the Truckee Hotel, a capital asset.  Accordingly, we hold that the fees at issue must be capitalized.

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[6]The settlement agreement essentially resulted in a reduced purchase price for the Truckee Hotel.  It appears that the reduction in the purchase price would decrease petitioners' basis in the hotel.