## WOODWARD ET AL. *v.* COMMISSIONER OF INTERNAL REVENUE

No. 412.   Argued February 26, 1970—Decided April 20, 1970

*Donald P. Cooney* argued the cause for petitioners. On the brief was *Martin M. Cooney.*

*Assistant Attorney General Walters* argued the cause for respondent. With him on the brief were *Solicitor General Griswold, Matthew J. Zinn, Gilbert E. Andrews,* and *Stuart A. Smith.*

MR. JUSTICE MARSHALL delivered the opinion of the Court.

This case and *United States* v. *Hilton Hotels Corp., post,* p. 580, involve the tax treatment of expenses incurred in certain appraisal litigation.

Taxpayers owned or controlled a majority of the common stock of the Telegraph-Herald, an Iowa·publishing corporation. The Telegraph-Herald was incorporated in 1901, and its charter was extended for 20-year periods in 1921 and 1941. On June 9, 1960, taxpayers voted their controlling share of the stock of the corporation in favor of a perpetual extension of the charter. A minority stockholder voted against the extension. Iowa law requires "those stockholders voting for such renewal . . . [to] purchase at its real value the stock voted against such renewal." Iowa Code § 491.25 (1966).

Taxpayers attempted to negotiate purchase of the dissenting stockholder's shares, but no agreement could be reached on the "real value" of those shares. Consequently, in 1962 taxpayers brought an action in state court to appraise the value of the minority stock interest. The trial court fixed a value, which was slightly reduced on appeal by the Iowa Supreme Court, *Woodward* v. *Quigley,* 257 Iowa 1077, 133 N. W. 2d 38, on rehearing, 257 Iowa 1104, 136 N. W. 2d 280 (1965). In July 1965, taxpayers purchased the minority stock interest at the price fixed by the court.

During 1963, taxpayers paid attorneys', accountants', and appraisers' fees of over $25,000, for services rendered

in connection with the appraisal litigation. On their 1963 federal income tax returns, taxpayers claimed deductions for these expenses, asserting that they were "ordinary and necessary expenses paid . . . for the management, conservation, or maintenance of property held for the production of income" deductible under § 212 of the Internal Revenue Code of 1954, 26 U. S. C. § 212. The Commissioner of Internal Revenue disallowed the deduction "because the fees represent capital expenditures incurred in connection with the acquisition of capital stock of a corporation." The Tax Court sustained the Commissioner's determination, with two dissenting opinions, 49 T. C. 377 (1968), and the Court of Appeals affirmed, 410 F. 2d 313 (C. A. 8th Cir. 1969). We granted certiorari, 396 U. S. 875 (1969), to resolve the conflict over the deductibility of the costs of appraisal proceedings between this decision and the decision of the Court of Appeals for the Seventh Circuit in *United States* v. *Hilton Hotels Corp., supra.*[1]   We affirm.

Since the inception of the present federal income tax in 1913, capital expenditures have not been deductible.[2] See Internal Revenue Code of 1954, § 263. Such expenditures are added to the basis of the capital asset

---

[1] Other federal court decisions on the point are in conflict. Compare *Boulder Building Corp.* v. *United States*, 125 F. Supp. 512 (D. C. W. D. Okla. 1954) (holding appraisal proceeding costs capital expenditures), with *Smith Hotel Enterprises, Inc.* v. *Nelson*, 236 F. Supp. 303 (D. C. E. D. Wis. 1964) (holding such costs deductible as ordinary and necessary business expense). And see *Heller* v. *Commissioner*, 2 T. C. 371 (1943), aff'd, 147 F. 2d 376 (C. A. 9th Cir. 1945) (holding dissenting stockholder's appraisal costs deductible under predecessor to § 212).

See also *Naylor* v. *Commissioner*, 203 F. 2d 346 (C. A. 5th Cir. 1953), in which expenses of litigation to fix the purchase price of stock sold pursuant to an option to purchase it at its net asset value on a certain date were held deductible under the predecessor of § 212.

[2] See § II B of the Income Tax Act of 1913, 38 Stat. 167.

with respect to which they are incurred, and are taken into account for tax purposes either through depreciation or by reducing the capital gain (or increasing the loss) when the asset is sold. If an expense is capital, it cannot be deducted as "ordinary and necessary," either as a business expense under § 162 of the Code or as an expense of "management, conservation, or maintenance" under § 212.[3]

It has long been recognized, as a general matter, that costs incurred in the acquisition or disposition of a capital asset are to be treated as capital expenditures. The most familiar example of such treatment is the capitalization of brokerage fees for the sale or purchase of securities, as explicitly provided by a longstanding Treasury regulation, Treas. Reg. on Income Tax § 1.263 (a)–2 (e), and as approved by this Court in *Helvering* v. *Winmill,* 305 U. S. 79 (1938), and *Spreckels* v. *Commissioner,* 315 U. S. 626 (1942). The Court recognized that brokers' commissions are "part of the acquisition cost of the securities," *Helvering* v. *Winmill, supra,* at 84, and relied on the Treasury regulation, which had been approved by statutory re-enactment, to deny deductions for such commissions even to a taxpayer for whom they were a regular and recurring expense in his business of buying and selling securities.

The regulations do not specify other sorts of acquisition costs, but rather provide generally that "[t]he cost of acquisition . . . of . . . property having a useful life substantially beyond the taxable year" is a capital ex-

---

[3] The two sections are *in pari materia* with respect to the capital-ordinary distinction, differing only in that § 212 allows deductions for the ordinary and necessary expenses of nonbusiness profitmaking activities. See *United States* v. *Gilmore,* 372 U. S. 39, 44–45 (1963). *Heller* v. *Commissioner,* n. 1, *supra,* may have been based in part on the premise that the predecessor of § 212 permitted the deduction of some expenses that would have been capitalized if incurred in the conduct of a trade or business.

penditure. Treas. Reg. on Income Tax § 1.263 (a)–2 (a). Under this general provision, the courts have held that legal, brokerage, accounting, and similar costs incurred in the acquisition or disposition of such property are capital expenditures. See, *e. g., Spangler* v. *Commissioner,* 323 F. 2d 913, 921 (C. A. 9th Cir. 1963); *United States* v. *St. Joe Paper Co.,* 284 F. 2d 430, 432 (C. A. 5th Cir. 1960). See generally 4A J. Mertens, Law of Federal Income Taxation §§ 25.25, 25.26, 25.40, 25A.15 (1966 rev.). The law could hardly be otherwise, for such ancillary expenses incurred in acquiring or disposing of an asset are as much part of the cost of that asset as is the price paid for it.

More difficult questions arise with respect to another class of capital expenditures, those incurred in "defending or perfecting title to property." Treas. Reg. on Income Tax § 1.263 (a)–2 (c). In one sense, any lawsuit brought against a taxpayer may affect his title to property—money or other assets subject to lien.[4] The courts, not believing that Congress meant all litigation expenses to be capitalized, have created the rule that such expenses are capital in nature only where the taxpayer's "primary purpose" in incurring them is to defend or perfect title. See, *e. g., Rassenfoss* v. *Commissioner,* 158 F. 2d 764 (C. A. 7th Cir. 1946); *Industrial Aggregate Co.* v. *United States,* 284 F. 2d 639, 645 (C. A. 8th Cir. 1960). This test hardly draws a bright line, and has produced a melange of decisions, which, as the Tax Court has noted, "[i]t would be idle to suggest . . . can be reconciled." *Ruoff* v. *Commissioner,* 30 T. C. 204, 208 (1958).[5]

---

[4] See *Hochschild* v. *Commissioner,* 161 F. 2d 817, 820 (C. A. 2d Cir. 1947) (Frank, J., dissenting).

[5] A large number of these decisions are collected in 4A Mertens, *supra,* §§ 25.24, 25A.16.

Taxpayers urge that this "primary purpose" test, developed in the context of cases involving the costs of defending property, should be applied to costs incurred in acquiring or disposing of property as well. And if it is so applied, they argue, the costs here in question were properly deducted, since the legal proceedings in which they were incurred did not directly involve the question of title to the minority stock, which all agreed was to pass to taxpayers, but rather was concerned solely with the value of that stock.[6]

We agree with the Tax Court and the Court of Appeals that the "primary purpose" test has no application here. That uncertain and difficult test may be the best that can be devised to determine the tax treatment of costs incurred in litigation that may affect a taxpayer's title to property more or less indirectly, and that thus calls for a judgment whether the taxpayer can fairly be said to be "defending or perfecting title." Such uncertainty is not called for in applying the regulation that makes the "cost of acquisition" of a capital asset a capital expense. In our view application of the latter regulation to litigation expenses involves the simpler inquiry whether the origin of the claim litigated is in the process of acquisition itself.

A test based upon the taxpayer's "purpose" in undertaking or defending a particular piece of litigation would encourage resort to formalisms and artificial distinctions. For instance, in this case there can be no doubt that

---

[6] Taxpayers argue at length that under Iowa law title to the stock passed before the appraisal proceeding. The Court of Appeals viewed Iowa law differently, and it seems to us that it was correct in so doing. See *United States* v. *Hilton Hotels Corp., post,* at 583–584, n. 2. But resolution of this question of state law makes no difference and is not necessary for decision of the case, since, as we hold in *Hilton Hotels,* the sequence in which title passes and price is determined is irrelevant for purposes of the tax question involved here.

legal, accounting, and appraisal costs incurred by taxpayers in *negotiating* a purchase of the minority stock would have been capital expenditures. See *Atzingen-Whitehouse Dairy Inc.* v. *Commissioner*, 36 T. C. 173 (1961). Under whatever test might be applied, such expenses would have clearly been "part of the acquisition cost" of the stock. *Helvering* v. *Winmill, supra*. Yet the appraisal proceeding was no more than the substitute that state law provided for the process of negotiation as a means of fixing the price at which the stock was to be purchased. Allowing deduction of expenses incurred in such a proceeding, merely on the ground that title was not directly put in question in the particular litigation, would be anomalous.

Further, a standard based on the origin of the claim litigated comports with this Court's recent ruling on the characterization of litigation expenses for tax purposes in *United States* v. *Gilmore*, 372 U. S. 39 (1963). This Court there held that the expense of defending a divorce suit was a nondeductible personal expense, even though the outcome of the divorce case would affect the taxpayer's property holdings, and might affect his business reputation. The Court rejected a test that looked to the consequences of the litigation, and did not even consider the taxpayer's motives or purposes in undertaking defense of the litigation, but rather examined the origin and character of the claim against the taxpayer, and found that the claim arose out of the personal relationship of marriage.

The standard here pronounced may, like any standard, present borderline cases, in which it is difficult to determine whether the origin of particular litigation lies in the process of acquisition.[7] This is not such a border-

---

[7] See, *e. g., Petschek* v. *United States*, 335 F. 2d 734 (C. A. 2d Cir. 1964), for a borderline case of whether legal expenses were incurred in the disposition of property.

line case. Here state law required taxpayers to "purchase" the stock owned by the dissenter. In the absence of agreement on the price at which the purchase was to be made, litigation was required to fix the price. Where property is acquired by purchase, nothing is more clearly part of the process of acquisition than the establishment of a purchase price.[8] Thus the expenses incurred in that litigation were properly treated as part of the cost of the stock that the taxpayers acquired.

*Affirmed.*

---

[8] Taxpayers argue that "purchase" analysis cannot properly be applied to the appraisal situation, because the transaction is an involuntary one from their point of view—an argument relied upon by the District Court in the *Smith Hotel Enterprises* case, *supra*, n. 1. In the first place, the transaction is in a sense voluntary, since the majority holders know that under state law they will have to buy out any dissenters. More fundamentally, however, wherever a capital asset is transferred to a new owner in exchange for value either agreed upon or determined by law to be a fair *quid pro quo*, the payment itself is a capital expenditure, and there is no reason why the costs of determining the amount of that payment should be considered capital in the case of the negotiated price and yet considered deductible in the case of the price fixed by law. See *Isaac G. Johnson & Co.* v. *United States,* 149 F. 2d 851 (C. A. 2d Cir. 1945) (expenses of litigating amount of fair compensation in condemnation proceeding held capital expenditures).