DEERING MILLIKEN, INC., SUCCESSOR BY MERGER TO PACOLET INDUSTRIES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7497–70.   Filed December 27, 1972.

*Jay W. Glasmann* and *Carol K. Nickel*, for the petitioner.
*Robert T. Hollohan* and *John H. W. Cole*, for the respondent.

#### OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency of $138,024.29 in petitioner's income tax for the year ending November 29, 1964. The question presented is whether a corporation, created in a consolidation, is entitled to amortize as organizational expenditures under section 248 [1] the costs of an appraisal proceeding brought against it by stockholders of the consolidating corporations who dissented from the consolidation.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code of 1954 ,as amended.

All of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

The petitioner had its principal place of business in New York, N.Y., at the time it filed the petition herein. It is the successor by merger in 1967 to Pacolet Industries, Inc. (hereinafter called Pacolet).

Pacolet was organized as a South Carolina corporation on December 3, 1962, in the course of implementing an agreement to consolidate five existing South Carolina corporations. Some of the stockholders of the consolidating corporations dissented from the consolidation and did not receive any stock of Pacolet. Under sections 12–459 and 12–460 of the South Carolina Code (1962), Pacolet was required to pay such dissenting stockholders the value of their stock in the consolidating corporations as of the date of consolidation. An appraisal proceeding was instituted by the dissenters against Pacolet and was settled in July 1964. Pursuant to the settlement, Pacolet paid the dissenters the appraised value of their stock in the consolidating corporations and interest thereon as required by South Carolina law.

During its fiscal year 1964, Pacolet also paid the dissenters $167,035.44 as their attorneys' fees and other costs of the proceeding and $7,862.52 to the court-appointed appraisers as their fees and expenses. Other costs incurred by Pacolet in connection with the suit included the fees it paid its own attorneys, appraisers, witnesses, and the court reporter in the amount of $14,223.51 in fiscal year 1963 and $194,155.51 in fiscal year 1964.

Pacolet began business in December 1962. In a statement attached to its Federal income tax return for the taxable year beginning December 3, 1962, and ending December 1, 1963, Pacolet elected under section 248 to treat its organizational expenditures as deferred expenses deductible ratably over a period of 60 months. Pacolet included among its purported organizational expenditures, treated in accordance with such election, the $14,223.51 of costs it incurred during that fiscal year in connection with the appraisal proceeding.

On its income tax return for the taxable year beginning December 2, 1963, and ending November 29, 1964, Pacolet claimed as a current deduction the $369,053.77 of costs it incurred during that fiscal year in connection with the appraisal proceeding. In computing its net operating loss carryover from the taxable year 1963 and its net operating loss deduction for the taxable year 1964, Pacolet claimed as a current deduction in taxable year 1963 the $14,223.51 of costs which it had treated on its previous year's return as organizational expenditures under section 248.

Respondent determined that the $14,223.51 and $369,053.77 amounts were not allowable as current deductions for the taxable years 1963 and 1964 and further determined that such amounts were capital expenditures which did not qualify for amortization under section 248.

Petitioner having conceded that the amounts in question are not allowable as current deductions,[2] the sole issue before us is whether they are amortizable as "organizational expenditures" under section 248.[3]

Initially, we note that petitioner seeks to prevail on the ground that respondent in his answer conceded its right to amortize the expenditures in question. We are satisfied from our examination of respondent's answer, in the context of the pleadings as a whole, that no such concession occurred.

Organizational expenditures must be incurred "incident to the creation of the corporation." Sec. 248(b)(1).[4] Petitioner's principal argument is that the proper criterion for judging whether litigation costs meet this requirement is the "origin of the claim" test enunciated by the Supreme Court in *United States* v. *Gilmore*, 372 U.S. 39, 48–49 (1963), and most recently applied by that Court in the companion cases of *Woodward* v. *Commissioner*, 397 U.S. 572, 577–578 (1970), and *United States* v. *Hilton Hotels*, 397 U.S. 580, 583 (1970). Petitioner's position is that "but for" the creation of Pacolet, no appraisal litigation would have occurred and the costs attendant upon such litigation would not have been generated.

While we agree with petitioner's articulation of the standards to be applied, we do not agree with the conclusion he asks us to reach. The

---

[2] *Woodward* v. *Commissioner*, 397 U.S. 572 (1970), and *United States* v. *Hilton Hotels*, 397 U.S. 580 (1970).

[3] Sec. 248 of the Code provides as follows:

ORGANIZATIONAL EXPENDITURES.

(a) ELECTION TO AMORTIZE.—The organizational expenditures of a corporation may, at the election of the corporation (made in accordance with regulations prescribed by the Secretary or his delegate), be treated as deferred expenses. In computing taxable income, such deferred expenses shall be allowed as a deduction ratably over such period of not less than 60 months as may be selected by the corporation (beginning with the month in which the corporation begins business).

(b) ORGANIZATIONAL EXPENDITURES DEFINED.—The term "organizational expenditures" means any expenditure which—

(1) is incident to the creation of the corporation;

(2) is chargeable to capital account; and

(3) is of a character which, if expended incident to the creation of a corporation having a limited life, would be amortizable over such life.

(c) TIME FOR AND SCOPE OF ELECTION.—The election provided by subsection (a) may be made for any taxable year beginning after December 31, 1953, but only if made not later than the time prescribed by law for filing the return for such taxable year (including extensions thereof). The period so elected shall be adhered to in computing the taxable income of the corporation for the taxable year for which the election is made and all subsequent taxable years. The election shall apply only with respect to expenditures paid or incurred on or after the date of enactment of this title.

[4] Sec. 1.248-1(b)(1), Income Tax Regs., provides that such expenditures must be "directly incident to the creation of the corporation." This regulation closely follows the language of the committee reports discussing sec. 248. See H. Rept. No. 1337, 83d Cong., 2d Sess., p. A64 (1954); S. Rept. No. 1622 ,83d Cong. 2d Sess., p. 224 (1954).

critical question is "but for" what? In *Gilmore*, there was a marriage, a divorce, and a property settlement; the Supreme Court held that the "origin of the claim" relating to expenses incurred in connection with the property settlement was the marriage, i.e., "but for" the marriage the other events would not have occurred. Here, there was an agreement to consolidate, the creation of Pacolet in implementation of that agreement, and the appraisal proceedings. In *Woodward* and *Hilton Hotels*, essentially the same events [5] occurred. In both cases, the Supreme Court found that the expenses of the appraisal proceedings originated in the agreement to consolidate and the resulting rights of the dissenters to have their interests acquired, i.e., "but for" that agreement, none of the subsequent events would have occurred and the expenditures of the appraisal proceedings would not have been made.

The Supreme Court put the matter succinctly when it stated in *Woodward* v. *Commissioner, supra* at 578–579:

> The standard here pronounced may, like any standard, present borderline cases, in which it is difficult to determine whether the origin of particular litigation lies in the process of acquisition.[7] This is not such a borderline case. Here state law required taxpayers to "purchase" the stock owned by the dissenter. In the absence of agreement on the price at which the purchase was to be made, litigation was required to fix the price. Where property is acquired by purchase, nothing is more clearly part of the process of acquisition than the establishment of a purchase price.[8] Thus the expenses incurred in that litigation were properly treated as part of the cost of the stock that the taxpayers acquired. [Footnotes omitted.]

We think this approach dictates a decision for respondent herein. Under section 12–457 of the South Carolina Code (1962), a new corporation resulting from the consolidation of existing corporations commences its existence whether or not the dissenting stockholders, if any, seek an appraisal of their stock. Thus, an appraisal proceeding, such as the one instituted against Pacolet, occurs precisely because the dissenting stockholders do not hold enough voting power to block the creation of the new consolidated corporation but are entitled only to receive payment from the new corporation for the value of their stock in the now defunct consolidating corporations. Consequently, the legal fees and other costs incurred by Pacolet in connection with the dissenting stockholders' suit were not related in function to the creation of the new corporate entity.

It is clear to us that the costs of the appraisal proceedings were notmade to bring Pacolet into being. It can not be said that the consolidation would not have taken place "but for" the creation of

---

[5] In *Woodward* it was actually a decision to make perpetual the 20-year life provided for by the charter an existing corporation.

Pacolet. On the contrary, "but for" the decision to consolidate, Pacolet would not have been created. Thus, as in *Woodward* and *Hilton Hotels*, the appraisal expenditures involved herein originated in that decision and the consequent necessity of acquiring the interests of the dissenters. Indeed, the basis of petitioner's position would seem to demand that the payments for the dissenters' interests in the consolidating corporations, as well as the costs of the appraisal proceedings, be treated as "organizational expenditures" under section 248.

In reaching our conclusion, we recognize that the fact that the consolidation constituted a reorganization under section 368(a)(1)(A) does not necessarily preclude the amortization of expenses connected therewith provided they are "directly incident to the creation of a corporation." Sec. 1.248–1(b)(4), Income Tax Regs., which tracks H. Rept. No. 1337, 83d Cong., 2d Sess., p.A64 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess., p. 224 (1954). In short, the same standard applies whatever the context in which a new corporation is created. [6]

Nor can petitioner derive any sustenance from the facts that the assets of the consolidated corporations vested in Pacolet and the rights of the dissenters *qua* shareholders disappeared. Whatever problems these facts may create with respect to the treatment of the costs of the appraisal proceedings for purposes other than amortization under section 248, they need not concern us in this proceeding.

Since we have found that the expenditures in question do not qualify as "organizational expenditures" under section 248 (b), we do not reach the further questions raised by respondent with respect to whether expenditures made after a new corporation's first taxable year may qualify as organizational expenditures, and whether Pacolet made a timely election in respect of its appraisal expenditures in 1964.

*Decision will be entered for respondent.*

---

[6] See *Reef Corp.*, T.C. Memo 1965–72, affirmed on other issues 368 F. 2d 125 (C.A. 5, 1966), where this Court held the organizational expenditures of creating a new corporation in the context of a type D reorganization amortizable under sec. 248. See also Rev. Rul. 70–241, 1970–1 C.B. 84, where the respondent ruled that organizational expenditures of a new corporation, created incident to a type F reorganization, are amortizable