JOHN C. SMITH II and JULIA S. SMITH, petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 4262-76.
United States Tax Court
T.C. Memo 1977-223; 1977 Tax Ct. Memo LEXIS 219; 36 T.C.M. (CCH) 932; T.C.M. (RIA) 770223; July 18, 1977, Filed Leo C. Sherry, Jr., for the petitioners. Jan R. Pierce, for the respondent. QUEALY
MEMORANDUM OPINION QUEALY, Judge: Respondent determined deficiencies in the Federal income taxes of petitioners as follows: Year
Deficiency
1971
$13,175.00
1972
20,116.00
1973
8,376.00
Due to concessions, the issues remaining for decision are as follows: 1. Whether payments made by petitioner for the assignment of a 20-year contract with a hospital are ordinary and necessary business expenses or capital expenditures. 2. Whether attorney's fees paid by petitioner for legal services in connection with such assignment are ordinary and necessary business expenses or capital expenditures. All of the *220 facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. John C. Smith II and Julia S. Smith, husband and wife, resided in Minot, North Dakota, at the time the petition was filed. They filed their income tax returns for the calendar years 1971, 1972 and 1973, utilizing the cash receipts and disbursements method of accounting, with the Internal Revenue Service Center, Ogden, Utah. John C. Smith II will hereinafter be referred to as petitioner. Petitioner is a physician specializing in the field of pathology. Prior to 1971, he was employed by Providence Hospital in Portland, Oregon. In late 1970, petitioner met Dr. Michael M. Stump at a seminar. Dr. Stump, also a pathologist, had signed an agreement with Trinity Hospital (hereinafter sometimes referred to as the Hospital) in Minot, North Dakota, to furnish his services as a Board Certified Pathologist to the Hospital in exchange for 33 1/3 percent of the gross laboratory income of the Hospital. The term of this agreement was 20 years, but the agreement could be terminated by either party on January 1, after 120 days written notice. This agreement had *221 15 years remaining as of July 1, 1971. As Dr. Stump wished to relocate, petitioner and Dr. Stump, in March of 1971, entered into an agreement under which petitioner was to pay Dr. Stump either for an assignment of the original agreement with the Hospital or for a substitute agreement with the Hospital acceptable to petitioner. The payment under this agreement was stated in terms of the lesser of $110,000 or 50 percent of the gross fees earned from the Hospital during the 24-month period ending June 30, 1973, plus 50 percent of the gross fees for pathology services rendered within a 200-mile radius of Minot, minus certain reimbursements to the Hospital. These amounts were to be paid in eight quarterly installments from September 30, 1971, to June 30, 1973. In connection with his agreement with Dr. Stump, petitioner incurred legal expenses in the amount of $730, of which approximately 25 percent related to tax counseling and assistance with evaluation of the business decision and approximately 75 percent related to the development and drafting of the agreement. The Hospital approved the substitution of petitioner under its original agreement with Dr. Stump; and Dr. Stump *222 assigned, on March 24, 1971, all of his right, title and interest under that agreement to petitioner. Petitioner began work with the Hospital in July 1971. Pursuant to their agreement, petitioner paid Dr. Stump the following amounts for the assignment of his interests in the Hospital agreement: 1971
$ 35,000
1972
46,875
1973
23,586
Total
$105,461
Dr. Stump agreed to report these payments as ordinary income to him. On petitioner's 1971 joint Federal income tax return, he deducted on Schedule C the amounts paid Dr. Stump during the calendar year from the receipts received by him from the Hospital. On his 1971 return, he also deducted $730 in legal fees. On his 1972 and 1973 returns, he deducted on Schedule C the amounts paid Dr. Stump as part of the cost of operating his medical pathology practice. Respondent determined that the amounts paid Dr. Stump for the assignment of the Hospital agreement were not ordinary and necessary business expenses because they resulted in the acquisition of an intangible asset with a life longer than one year. Respondent also disallowed the deduction of attorney's fees on the same basis. However, respondent now concedes *223 that a portion of such fees, the amount of $183, is deductible. Petitioner argues that the payments to Dr. Stump were incurred in seeking new employment and are thus deductible.See Rev. Rul. 75-120, 1975-1 C.B. 55. Further, petitioner argues that the agreement between petitioner and the Hospital is an employment contract and, as a matter of law, is not a capital asset. It is clear that petitioner was not an employee of the Hospital. Although the facts indicate that he had been directly employed as a pathologist by the Providence Hospital in Portland, Oregon, the working arrangement with Trinity Hospital was more in the character of an independent contractor. Trinity Hospital did not pay petitioner's salary and did not withhold income or social security taxes from his percentage of the gross receipts from the pathology laboratory. Further, petitioner reported his income and expenses as a self-employed individual and paid self-employment tax. Under these circumstances, we must conclude that the amounts paid Dr. Stump cannot have been for the new employment, as that term is used in the revenue ruling relied upon by petitioner, Rev. Rul. 75-120, 1975-1 C.B. 55. *224 The payments made by petitioner were not related to any services performed or to be performed by Dr. Stump. Petitioner made these payments in order to acquire Dr. Stump's medical practice, the principal asset of which was Dr. Stump's contract with Trinity Hospital. The nature of the specialty of pathology, as we understand it, is such that it is practiced primarily in association with hospitals. In assuming the Trinity Contract, petitioner was, in essence, purchasing the right to practice his medical specialty from the doctor who was previously the chief pathologist at Trinity Hospital. The general rule is that the acquisition of a professional practice is the acquisition of an intangible capital asset in the nature of goodwill. Misegades v. Commissioner,53 T.C. 477 (1969); Boe v. Commissioner,35 T.C. 720 (1961), affd. 307 F.2d 339 (9th Cir. 1962); Meurlin v. Commissioner,25 T.C. 118 (1955). In Boe v. Commissioner,supra, *225 the taxpayer purchased a medical practice including a large number of medical service contracts, which provided for certain medical services upon the payment of a monthly fee. We held there that these contracts constituted an intangible asset whose useful life was indefinite. From the purchaser's perspective, the factual situation in Boe is analogous to the facts here. In both cases, the doctor was acquiring a type of service contract as the principal asset of a medical practice. Furthermore, the fact that the Trinity Contract could be terminated on January 1 after 120 days written notice is not sufficient grounds for the deduction of these payments currently. See Walters v. Commissioner,383 F.2d 922 (6th Cir. 1967); Wells-Lee v. Commissioner,360 F.2d 665 (8th Cir. 1966); Heigerick v. Commissioner,45 T.C. 475 (1966). In these cases, the qualification as a hospital staff member was subject to periodic or annual review. The taxpayers argued that such fees should be deductible in the year paid since the benefit derived from the payment would not necessarily extend beyond one year. The courts held, in part, that the possibility *226 of termination from such review did not create a sufficient basis for current deduction since the doctors had every expectation of being reappointed or continuing in their appointment if their work and conduct were satisfactory. The facts here suggest a similar result. Assuming petitioner's services were satisfactory, and there is no reason to assume otherwise, the possibility that the Hospital would terminate this arrangement in any one year was minimal. It is unlikely petitioner would have been willing to move to North Dakota and pay over $105,000 for the assignment of Dr. Stump's rights under the Trinity Contract if there was such uncertainty. This conclusion is borne out by the fact that petitioner has now worked with the Hospital for over six years and there is no reason to conclude from the evidence that he will not be able to complete the entire 15-year term. Accordingly, we must conclude that petitioner's payments to Dr. Stump were capital expenditures for the acquisition of an intangible asset having a useful life of more than one year. Petitioner's right to amortize these payments is not in question. See section 1.167(a)-3, Income Tax Regs. *227 Petitioner argues that even if the payments are capital in nature, they should be amortized over a five-year period, the length of time Dr. Stump had worked with the Hospital. Respondent would permit the petitioner to amortize the payments over the 15-year period remaining on the Trinity Contract. The Court's decision that the amounts in question were paid for the privilege to practice on the Trinity Hospital staff could arguably require amortization over the doctor's life expectancy. Sharon v. Commissioner,66 T.C. 515, 530 (1976). See also Walters v. Commissioner,supra at 924; Wells-Lee v. Commissioner,supra at 672-673. However, the Court will accept respondent's determination that the payments should be amortized over 15 years.
In connection with petitioner's negotiations with Dr. Stump, he incurred legal fees in the amount of $730. The parties have stipulated that $183 of this amount is attributable to tax counseling and assistance with an evaluation of the business aspects of the transaction. Respondent concedes that *228 this portion of the fee is deductible. The remaining portion of the fee, the amount of $547, is attributable to the development and drafting of the agreement. Respondent argues that this portion of the fee must be considered a capital expenditure if we find that the payments to Dr. Stump secured long-term benefits for the petitioner. Respondent relies on Woodward v. Commissioner,397 U.S. 572 (1970). In that case, the Supreme Court stated that legal, brokerage, accounting and similar costs incurred in the acquisition of a capital asset are capital expenditures. In light of our conclusion regarding the character of the payments to Dr. Stump, we must also conclude that this portion of the attorney's fee was also a capital expenditure. United States v. Hilton Hotels Corp.,397 U.S. 580 (1970). Decision will be entered under Rule 155.