IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| SHAWN MICHAEL LIOY-RYAN, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 120596D |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appeals Defendant's Notice of Deficiency Assessment for tax year 2007. A trial was held in the Oregon Tax Courtroom, Salem, Oregon, on September 5, 2012. Plaintiff appeared on his own behalf. Daniel Lioy (Lioy) testified on behalf of Plaintiff. Nancy Berwick (Berwick) appeared and testified on behalf of Defendant.

Plaintiff's Exhibits 1 through 17, Plaintiff's Rebuttal Exhibit 1, and Defendant's Exhibits A through J were admitted without objection.

## I. STATEMENT OF FACTS

Plaintiff is the sole owner of SafeJourney Pet Sitting, LLC (SafeJourney). (Ptf's Compl at 2.) Plaintiff testified that he formed SafeJourney in November 2006, and its activities included Plaintiff travelling to clients' homes to walk their dogs or otherwise take care of their pets. As the business grew, Plaintiff expanded SafeJourney to include boarding services. (*Id*.)

Plaintiff filed his 2007 Amended Oregon Individual Tax Return on April 21, 2011. (Def's Ex E at 1.) Plaintiff claimed Schedule C deductions of $7,994 for "Car and truck," $53,775 for "Contract labor," $14,932 for "Legal and professional services," $0 for "Business property rental," and $0 for "Meals and entertainment."(Def's Ex A at 5.) On May 25, 2011,

/ / /

Defendant issued an Auditor's Report, making several adjustments to Plaintiff's amended tax return. (Def's Ex A at 1-12.)

Plaintiff filed his Complaint with this court June 13, 2012, requesting the court to review a number of his purported deductions and Defendant's adjustments of "Car and Truck," "Contract Labor," "Legal/Professional," "Business Rental Property," "Meals & Ent[ertainment]," "Travel," and "Snuggle Kitties." (Ptf's Compl at 16.) At trial, Plaintiff accepted Defendant's determinations regarding the contract labor and the meals and entertainment.

A.    *Automobile expenses*

Plaintiff contends that he is entitled to a deduction for the use of two automobiles to travel to clients' homes. The first vehicle used was a 1999 Subaru Outback (Subaru), which Plaintiff owned as a personal vehicle prior to the creation of SafeJourney. (*Id*. at 6.) Plaintiff testified that, in July 2007, in order to meet the rising demands of business, he purchased a used 1993 Mercedes wagon (Mercedes). (*See* Ptf's Ex 6.)

1.    *Subaru mileage*

As evidence of the automobile expenses, Plaintiff testified that he "kept meticulous records on the travel and mileage." Plaintiff submitted a computer spreadsheet that he identified as a mileage log (log) for the Subaru and the Mercedes. (Ptf's Exs 4 and 5.) For the Subaru, the log began on January 1, 2007, and ended December 30, 2007. (*See* Ptf's Ex 4.) The log consisted of entries for each trip, along with the following details: the date; the street address, city and zip code of the destination; the one way and total mileage for each trip; and the starting and ending odometer readings. (*See id*.) There was at least one entry for every day of the year, except for one week from May 4 through May 12, 2007. (*Id*.)

From May 13, 2007, until the year end, the log was computer prepared. (*Id*. at 1-15.) The log states "ALL TRAVEL MILEAGE IS FOR PET CARE AND DOG WALKING AT A CLIENT'S HOME." (*Id*. (emphasis in original).) Plaintiff testified that he used Google Maps to estimate the mileage for each entry. Plaintiff also testified that the computer "did calculations" based on the Google Maps mileage to archive the odometer reading. The odometer readings indicate that the Subaru was used exclusively for business purposes daily from May 13, 2007, to December 30, 2007. (*Id*.) Plaintiff testified that "it was almost impossible to do anything personal" outside of business operations. Each trip began and ended at the location of the house/kennel, 3525 SE Milwaukie Ave, Portland, Oregon. (*Id*.) The majority of the destinations were within the Portland area. There were a number of other entries. (*Id*.) A June 4, 2007, entry recorded a trip to Blaine, Washington, near the Canadian border, with one-way mileage of 66 miles. (*Id*. at 2.) A June 8, 2007, entry recorded a trip to a Washington State zip code 98166 with a one-way mileage of 269 miles. (*Id*. at 3.) On June 13, 2007, the log recorded a trip to Bend, Oregon, with a one-way mileage of 253 miles. (*Id*.) Finally, On October 21, 2007, the log recorded a trip to "San Fran," zip code 94110, with one-way mileage of 10.1 miles. (*Id*. at 11.)

For entries dated January 1, 2007 to May 2, 2007, Plaintiff testified that a daily roster of homes to be visited was printed, and Plaintiff handwrote the mileage on the roster. (*See id*. at 16-81.) The roster listed the addresses of the clients' homes. (*See id*.) Plaintiff then handwrote the date, mileage for each address, total mileage for each day, and the beginning and ending odometer readings. (*See id*.) Some of the same entries from the computer generated log also appear on the daily roster. For example, on March 11, 2007, the roster stated that Plaintiff traveled from 3960 N Mississippi Ave #1, Portland, OR 97227, to 20311 Marine View Dr SW, Normandy Park WA, 98166. (*Id*. at 41.) Plaintiff wrote that "9" miles were traveled between

those two addresses. (*Id.*) That same day, the roster stated that Plaintiff traveled back to Portland, Oregon, before driving "11" miles to 4406 Carstan Loop Rd, Blaine, WA 98320. (*Id.*) The total mileage recorded for that trip was 188 miles. (*Id.*)

Plaintiff testified that he worked for Clark County Public Health in Vancouver, Washington, for the first four months of 2007. He testified that any personal use of the Subaru, including his commute to work, was not recorded in the mileage log. Between January 1, 2007, and May 2, 2007, Plaintiff's Subaru mileage log stated a total of 10,622 miles.[1] (*Id.* at 16, 29, 47, 61.) For the remaining part of 2007, the computer generated log stated a total of 14,994.10 miles. (*Id.* at 1-15.) The total business use for the Subaru, as documented on the mileage log, was 25,616.10 miles. (Ptf's Ex 4.) The odometer reading on January 1, 2007, was 129,710 miles, and, on December 30, 2007, was 156,744.10 miles; and Plaintiff testified that the overall mileage for the Subaru, including any personal use, was 27,034.10 miles. (*Id.* at 15, 81.) Plaintiff testified that "some 15,000 miles were accrued personally."

2.      *Mercedes mileage*

Plaintiff testified that the Mercedes was used exclusively for business purposes. The mileage log (log) for the Mercedes was created similarly to the Subaru computer generated mileage log. Plaintiff testified that mileage was calculated using Google Maps. The mileage log showed that the Mercedes was used every day from August 20, 2007, to December 31, 2007. (Ptf's Ex 5.) Each trip started and ended at the house/kennel, 3525 SE Milwaukie Ave, Portland, Oregon. (*Id.*) On September 20, 2007, the log stated a visit to "5664 SW Hennesy A[ve]" in "Portland" for a one-way distance of 74.60 miles. (*Id.* at 4.) On November 19, 2007, and November 22, 2007, trips were reported to Salem, Oregon, with one way mileage of 83.20 miles.

_____

[1] That figure was calculated from the monthly totals listed on Plaintiff's log.

(*Id*. at 10.)  Similar to the Subaru, the Mercedes made trips to Bend, Eugene, Blaine, "[N]ormandy Par[k]," and "San Fran."  (*Id*. at 5-8, 11-12.)  The total business use of the Mercedes, as reflected in the mileage log odometer readings, was 17,086.9 miles.  (Ptf's Ex 5.)

Taking the use of the Subaru and Mercedes together, the mileage logs indicate that 42,703 miles were accrued in Plaintiff's operation of SafeJourney. (*Id*.; Ptf's Ex 4.)  Plaintiff requested a deduction between $16,280 and $16,580 for business use of an automobile, using the standard mileage rate for 2007.[2]  (Ptf's Summ of Issues at 1, Aug 6, 2012.)

B.      *Commercial rental property expenses*

Plaintiff alleged that he was eligible for a rent deduction for "Commercial Rental Property."  (*Id*.)  Plaintiff testified that, in March 2007, he began boarding dogs in his own home as part of SafeJourney's operations.  He testified that he "set out to find a commercial property that could be sold as a home, but was a boarding kennel."

1.      *Purchase option*

Plaintiff testified that, on March 23, 2007, he entered into a lease with Pablo D. Rodriguez (Rodriguez) for the commercial rental of an "1873 Victorian" home (SafeJourney home) for $2,000 a month.  (*See* Ptf's Ex 12 at 6-9.)  Plaintiff also signed an "OPTION FOR PURCHASE OF REAL ESTATE" with Rodriguez, which states that, for $15,000, Rodriguez "gives and grants to [Plaintiff] a sole, exclusive, and irrevocable option to purchase" the property.  (*Id*. at 1. (emphasis in original).)  "The option shall commence on March 23, 2007 and expire at midnight on March 23, 2009. * * * The consideration paid for this option [shall] be applied to the purchase price."  (*Id*.)  During trial, Plaintiff referred to the $15,000 option as a

_____

[2] Plaintiff stated that he "can substantiate $16,280 in car expenses using mileage logs," requesting that the "AGI be reduced from $58,873 to $42,293," which, the court notes, results in a difference of $16,580.  (Ptf's Summ of Issues at 1, Aug 6, 2012.)

"deposit." Plaintiff testified that "it only becomes the option when we exercise the option. Before exercising the option, it's a security deposit for the lease." Plaintiff provided a document, signed by himself, Lioy, and Rodriguez, stating that $17,000 was tendered to Rodriguez. (*Id*. at 3.)

2.    *Rent*

Plaintiff testified that he wanted to live in the SafeJourney home/kennel. He testified that he applied for, and was granted, the appropriate live/work permit. Lioy testified that the entire first floor was used to board dogs, and that the majority of the second floor was reserved for cats. Lioy testified that only the second floor bedroom and bathroom upstairs were used for living. On his IRS Form 8829, Plaintiff claimed 1,902 of the 2,026 square foot SafeJourney home, or 93.88 percent, was used exclusively for business. (Def's Ex E at 12.)

The lease provided that the monthly rent would be $2,000.[3] (Ptfs' Ex 12 at 6.) Plaintiff provided copies of checks, showing $2,000 payments for May, July, August, September, October, November, and December. (Ptf's Ex 13 at 1-8.) Plaintiff also submitted a check dated June 6, 2007, for $1500. Plaintiff testified that he believed that was a check for March rent, which was prorated. (*Id*. at 8.)

3.    *Animal permit fees*

Plaintiff's "Commercial Rental Property" expenses included permit fees from Multnomah County Animal Services. (Ptf's Ex 11.) Plaintiff testified that an inspector was required to tour the SafeJourney home/kennel and determine the maximum number of animals that could be boarded at any given time, and that a permit was issued thereafter. Plaintiff submitted a letter from Jennifer Huisman, dated March 13, 2007, which stated "[e]nclosed are

---

[3] Although the lease merely states "a rental of $2000," Plaintiff testified, and Plaintiff's payment evidence shows, that rent was paid monthly. (Ptf's Ex 12 at 6.)

the id tags for your cats; * * * I will need you to obtain a rabies vaccination for Phinus, Boopers, and Peanut. I will also need proof of rabies for Jonah * * *." (*Id*. at 1.) When asked by Berwick whether he and Plaintiff had any pets, Lioy testified that they "inherited two cats." Plaintiff submitted a receipt for "Permit, Facility (11+)" of $195. (*Id*. at 2.) As evidence of additional permit fees, Plaintiff submitted checks addressed to "Multnomah County Animal Services" and "Duke Kim" for $381 and $50, respectively. (*Id*. at 4.)

Taking into account the purchase option, rent, and permit fees, Plaintiff requested a "Commercial Rental Property" expense deduction of between $27,295 and $38,310.[4] (Ptf's Summary of Issues at 1, Aug 6, 2012.)

C.     *Legal and professional fees*

Plaintiff also requested deductions for legal and professional fees.

1.     *Legal fees*

Plaintiff testified that he "worked with a property attorney" and incurred legal fees related to "housing." He testified that "legal fees were necessary" when Rodriguez became insolvent and stopped paying the mortgage payments for the SafeJourney home/kennel. Plaintiff submitted evidence of a credit card payment and a check to a local law firm, as well as an email from a local attorney, Martin Reeves (Reeves). (Ptf's Ex 9 at 77-79.) In the email, Reeves explained the steps Plaintiff could take to "put[] the world on formal notice of [his] claim to an interest in the real property." (*Id*. at 78.)

/ / /

/ / /

---

[4] Plaintiff stated that he "can substantiate $27,295. Plaintiff hereby requests AGI be reduced from $27,292 to negative -$11,018," which, the court notes, results in a difference of $38,310. (Ptf's Summ of Issues at 1, Aug 6, 2012.)

2.    *Professional fees*

Plaintiff submitted the account statement of SafeJourney, as well as a PayPal log of various expenditures.  (Ptf's Exs 7, 8.)  Many of the PayPal expenses were for "Elance, Inc." (Elance), which Plaintiff testified is a "website in which anybody can find freelance professionals" for "stuff you can't do yourself."  (*See e.g.*, Ptf's Ex 8 at 1.)  Plaintiff testified that he used Elance to do "all these projects" including marketing, website development, art, and campaigning.  The Elance invoices show that Plaintiff paid for "20 articles," "Ebooks," "Database Design," "ads," and unspecified "projects."  (Ptf's Ex 9 at 32-38.)

Numerous other expenses were related to the buying or registering of domain names. Plaintiff testified that he "went out and started buying domain names of every variation."  He testified that doing so is necessary to "secure your brand."  Plaintiff testified that he developed a pet shampoo, and that many of the domain registries were in anticipation for "some point" when his "product became marketable and ready for a national stage."  The domain names registered include:

> "WATERLESSSHAMPOO.NET"
> "DESIGNDAZZLER.COM"
> "JOBTOOSMALL.COM"
> "RAWFORLIFE.NET"
> "OURFOURLEGGEDFRIENDS.NET"
> "MONKMONEY.NET"
> "SNUGGLEKITTIES.COM"
> "SAFEJOURNEYPETSITTING.COM."

(*Id*. at 1-31.)  The invoice states that the expense relating to "SAFEJOURNEYPETSETTING.COM" was refunded in whole or in part.  (*Id*. at 19.)

Plaintiff claims legal and professional fees between $26,015 and $26,316.[5]

---

[5] Plaintiff stated that he "can substantiate $26,316 in expenses.  Plaintiff requests the AGI be reduced from $42,292 to $16,277" which, the court notes, is $26,015.  (Ptf's Summ of Issues at 1, Aug 6, 2012.)

D.    *Travel expenses*

Plaintiff testified that he wanted to capitalize on the success of SafeJourney by franchising the business concept. Plaintiff testified that he "travelled to various places and had people come" to tour the SafeJourney home. When asked by Berwick whether he had "left town" in 2007, Plaintiff replied "probably, yes." Plaintiff then later stated that it is "highly unlikely" that he did any travelling in 2007. Plaintiff submitted credit card statements to substantiate travel expenses. (Ptf's Ex 17.) On June 25, 2007, a flight was reserved for "LIOY/DANIEL" to Chicago, Illinois. (*Id*. at 1. (emphasis in original).) The purpose stated on the exhibit was "pitching for investors." (*Id*.) Plaintiff reserved a hotel in Portland, Oregon, "For Leela Vox" for the stated purpose of "investor pitching." (*Id*. at 5.) The hotel was reserved for three adults from September 22 to September 30, 2007. (*Id*.)

Another travel expense was "Pitching to Investors from Portland to California June 27-July 2nd," which included a $362.96 charge to the "EAGLEWOOD RESORT AND S ITASCA IL" on June 28, 2007. (*Id*. at 8. (emphasis in original).) Berwick questioned Plaintiff about that charge, and Plaintiff conceded that he "didn't go and that that trip wasn't for" him, nor was it business related. Plaintiff originally claimed $2,012 in travel expenses, but requested at trial that the Englewood Resort charge not be included. (Ptf's Summ of Issues at 2, Aug 6, 2012.) Plaintiff now claims $1,649.04 of travel related business expenses.

E.    *SnuggleKitties*

Plaintiff testified that, in April 2007, he "bought a cat business" named SnuggleKitties Cat Sitting (SnuggleKitties). The "Sales Agreement" states that "Seller agrees to relinquish all rights and ownership of SnuggleKitties Cat Sitting. (Ptf's Ex 14 at 1.) That includes the name of the business, current registrations, advertising accounts, memberships, website, domain, hosting

and other internet-related items" for the "sum of $4,000." (*Id.*) Plaintiff testified that he took control of SnuggleKitties' customer list and assumed pet-sitting duties. Plaintiff requested a business expense of $4,000 for "the purchase of the customer list." (Ptf's Summ of Issues at 1, Aug 6, 2012.)

## II. ANALYSIS

The issue before the court is the deductibility of several different items claimed as business related expenses. "The Oregon Legislature intended to make Oregon personal income tax law identical to the Internal Revenue Code (IRC) for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon Law." *Ellison v. Dept. of Rev.*, TC-MD No 041142D, WL 2414746 at *6 (Sept 23, 2005) (citing ORS 316.007). As a result, the legislature adopted, by reference, the federal deductions, including those allowed under the Internal Revenue Code (IRC). ORS 316.007(2).[6]

IRC section 162(a) provides in relevant part that "[t]here shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." "To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253, 2002 WL 236685 at *2 (US Tax Ct 2002) (internal citations omitted). This court has stated that "an ordinary expense is one which is customary or usual. This does not mean customary or usual within the taxpayer's experience but rather in the experience of a particular trade, industry or community." *Roelli v. Dept. of Rev.* (*Roelli)*, 10 OTR 256, 258 (1986) (citing *Welch v. Helvering*, 290 US 111, 54 S Ct 8, 78 L Ed 212 (1933));

---

[6] All references to the Oregon Revised Statutes (ORS) are to 2007. All references to the IRC and accompanying regulations are to the 1986 code, and include updates applicable to 2007.

*Guinn v. Dept. of Rev.*, TC-MD No 040472D, 2005 WL 1089727 at *4 (Apr 19, 2005) (citing

*Roelli* at 258).

IRC section 263 disallows a deduction for "capital expenditures," defined as "[a]ny

amount[s] paid out for new buildings or for permanent improvements or betterments made to

increase the value of any property or estate." IRC § 263(a)(1). The United States Supreme

Court has held that "a taxpayer's expenditure that 'serves to create or enhance . . . a separate and

distinct' asset should be capitalized under § 263. * * * In short, * * * the creation of a separate

and distinct asset well may be a sufficient, but not a necessary, condition to classification as a

capital expenditure." *INDOPCO, Inc. v. Comm'r*, 503 US 79, 86-87, 112 S Ct 1039, 117 L Ed

2d 226 (1992) (quoting *Comm'r v. Lincoln Sav. & Loan Ass'n*, 403 US 345, 354, 91 S Ct 1893,

29 L Ed 2d 519 (1971)) (citation omitted). The IRC does not provide an exhaustive list of

capital expenditures, but the relevant regulations provide guidance. Examples of capital

expenditures include amounts paid to acquire, produce, or improve "a unit of real or personal

tangible property," as well as an amount paid to "acquire or create intangibles." Temp Treas Reg

§ 1.263(a)-1T(c).

It is a well settled principle that "[d]eductions are strictly a matter of legislative grace,

and a taxpayer must meet the specific statutory requirements for any deduction claimed."

*Gapikia v. Comm'r*, 81 TCM (CCH) 1488, WL 332038 at *2 (2001) (citations omitted).

"Taxpayers are required to maintain records sufficient to substantiate their claimed deductions."

*Id*. (citations omitted). "In all proceedings before the judge or a magistrate of the tax court and

upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of

proof. The burden of proof shall fall upon the party seeking affirmative relief * * *."

ORS 305.427. Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530, WL 914208 at *2 (July 12, 2001) (citing *Feves v. Dept. of Rev.*, 4 OTR 302 (1971)).

A.      *Automobile expenses*

The first issue before the court is the Plaintiff's claimed automobile expenses. Treasury Regulation section 1.162-1(a) states that "[a]mong the items included in business expenses are * * * operating expenses of automobiles used in the trade or business * * *." Plaintiff contends that the use of the Subaru and Mercedes to drive to clients' homes are necessary and ordinary expenses of SafeJourney's operation. The mileage logs show that trips were made from Portland, Oregon, to Blaine, Washington, Normandy Park, Washington (near Seattle), Bend, Oregon, and San Francisco, California. Plaintiff provided no evidence or testimony to explain such lengthy trips. Based on the lack of evidence, the court concludes that trips over 200 miles are not "customary or usual" in the pet-sitting industry, nor are they "a common or frequent occurrence."

In addition to the requirements of IRC section 162(a), a taxpayer may not deduct operating expenses of automobiles unless the substantiation requirements of IRC section 274 are met. Under IRC section 274(d), a taxpayer must substantiate such expenses by "adequate records or by sufficient evidence corroborating the taxpayer's own statement" of the expense amount, date and time, place, the business purpose, and the business relationship of the persons involved. For use of an automobile, at a minimum, the taxpayer must substantiate the following elements: (i) the amount of the business use (a ratio of business use to total use of the automobile for a period of time), (ii) the date and place of the use, and (iii) the business purpose of the use. *See* Temp Treas Reg § 1.274-5T(b)(6).

"To meet the 'adequate records' requirements of section 274(d), a taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record * * *, and documentary evidence * * * which, in combination, are sufficient to establish each element" for use of an automobile. *See* Temp Treas Reg § 1.274-5T(c)(2)(i). Thus, in order to meet the adequate record requirements, Plaintiff's mileage logs, along with other documentary evidence, must be sufficient to establish the amount of business use, the date and place of the use, and the business purpose. Each entry in Plaintiff's logs was dated; the only remaining issues are the amount of business use and business purpose elements.

Temporary Treasury Regulation section 1.274-5T(c)(2)(ii)(C) states:

"In order to constitute an adequate record * * * which substantiates business/investment use of listed property * * *, the record must contain sufficient information as to each element of every business/investment use. However, the level of detail required in an adequate record to substantiate business/investment use may vary depending upon the facts and circumstances. For example, a taxpayer who uses a truck for both business and personal purposes and whose only business use of a truck is to make deliveries to customers on an established route may satisfy the adequate record requirement by recording the total number miles driven during the taxable year, the length of the delivery route once, and the date of each trip at or near the time of the trips. Alternatively, the taxpayer may establish the date of each trip with a receipt, record of delivery, or other documentary evidence."

Plaintiff estimated the one-way mileage using Google Maps. The "Odometer Reading[s]" listed on the logs were also calculated using the Google Maps mileage, rather than writing the reading from either the Subaru's or the Mercedes' actual odometers. The one-way mileage from Portland, Oregon, to Blaine, Washington, was recorded as 66. The one-way mileage to San Francisco, California, was recorded as 10. Those records are clearly wrong. On March 11, 2007, Plaintiff recorded visits to 14 different locations, traveling from Oregon to Normandy Park, Washington, then back to Portland, then to Blaine, Washington, before returning to Portland. The total of those trips was recorded as 188 miles. Plaintiff recorded

traveling over 70 miles one way between two locations within the city of Portland. Plaintiff did not travel an established route nor did Plaintiff provide receipts or other documents. Plaintiff alleged that for each house-sitting trip he started from the SafeJourney home/kennel and returned to the same location; he alleged that he never traveled from one customer location to another customer location. The mileage logs indicate that Plaintiff made house visits every day, with the exception of one week in May.

Due to the inconsistencies in the recorded mileage and the unanswered questions raised by many entries, the count finds that more detail is required for Plaintiff's mileage logs to be "adequate records."

If a taxpayer fails to substantially comply with the "adequate records" requirement with respect to an element, however, the taxpayer can establish such element "[b]y his own statement, whether written or oral, containing specific information in detail as to such element" and "[b]y other corrobative evidence sufficient to establish such element[.]" Temp Treas Reg § 1.274-5T(c)(3)(i). Plaintiff's mileage logs show a business use of the Subaru of 25,616.10 miles; and total use of 27,034.10 miles. That difference for non-business use is substantially less than Plaintiff's testimony of 15,000 miles of non-business use. The evidence does not corroborate Plaintiff's testimony.

Too many inconsistencies and unanswered questions are found in Plaintiff's mileage logs and testimony. The mileage logs raise doubts over whether some of the expenses were "ordinary and necessary" business expenses. Additionally, the mileage logs are not adequate records that substantiate the business use requirement of IRC section 274(d). Plaintiff failed to carry his burden of proof with respect to claimed automobile expenses.

///

B.      *Commercial rental property expenses*

Plaintiff claimed commercial rental property expenses, specifically the purchase option, rent, and animal permit fees.

1.      *Purchase option*

For purposes of IRC section 263 and accompanying regulations, the term "intangible" includes options, "including an agreement under which the taxpayer has the right to provide or to acquire property * * *." Treas Reg § 1.263(a)-4(d)(2)(C)(7). Plaintiff signed a document titled "OPTION FOR PURCHASE OF REAL ESTATE," providing that he would pay $15,000 for the option to purchase the SafeJourney home within a two year time period. Plaintiff eventually purchased the SafeJourney home from a bank, rather than by virtue of the option, which evidenced Plaintiff's intent to purchase the property. Plaintiff's testimony that the $15,000 was a security deposit is unfounded and unsupported by the evidence. Plaintiff's claim relating to the purchase option is denied for the 2007 tax year.

2.      *Rent*

IRC section 162(a)(3) explicitly states that rentals are an allowable business deduction. IRC section 280A(c)(1) states, however, that no deduction is allowed with respect to the use of a taxpayer's dwelling, except "to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis * * * as the principal place of business for any trade or business of the taxpayer[.]"

Plaintiff claimed that 1,902 of 2,026 square feet, or 93.88 percent, of the SafeJourney home was used exclusively for business. That claim was supported by Lioy, who testified that he and Plaintiff lived in only the second floor bedroom and bathroom in 2007. Although no

blueprints for the SafeJourney home or room measurements were submitted, the court is persuaded by Plaintiff's evidence and Lioy's testimony.

Plaintiff submitted copies of eight checks totaling $15,500. Plaintiff lived in the house from around the end of March through the end of the year, or a little more than nine months. Plaintiff also submitted a signed statement by him, Lioy, and Rodriguez stating that $17,000 was paid at the time of the signing of the lease. The court has determined that $15,000 of that amount was paid for an option for purchase, and the remainder, $2,000, was either an actual security deposit, the first month's rent, or some other rent related expense attributable to the ninth month missing from the copies of canceled checks. The court finds that Plaintiff's total allowable rent expense was $17,500 for tax year 2007. Plaintiff is allowed a percentage rental business deduction, 93.88 percent, of that expense, or $16,429.

3. *Animal permit fees*

Plaintiff submitted evidence that he paid $195 for permit fees. Plaintiff did not establish that any expenses related to business use other than a personal expense for his own pets. The letter from Jennifer Huisman stated that Plaintiff received identification tags for his own cats, and that Plaintiff should seek rabies vaccinations for Phinus, Boopers, Peanut, and Jonah. Plaintiff did not testify as to what the other amounts of $381 and $50 were for, nor did Plaintiff identify whether all the named animals were owned by him or his customers. The court finds that only $195 is an allowable business deduction.

C. *Legal and professional fees*

Plaintiff claimed deductions for legal and professional fees.

/ / /

/ / /

1.      *Legal fees*

In a previous decision, this court stated that "[t]he cases analyzing the tax treatment of legal fees and settlement payments have left a confusing legacy." *Freeman v. Dept. of Rev.*, TC-MD Nos 990896C and 990898C, WL 321152 at *2 (Mar 9, 2000). Historically, however, "[i]t has long been recognized, as a general matter, that costs incurred in the acquisition or disposition of a capital asset are to be treated as capital expenditures." *Woodward v. Comm'r*, 397 US 572, 575, 90 S Ct 1302, 25 L Ed 2d 577 (1970). Further, "the courts have held that *legal*, brokerage, accounting, and similar costs incurred in the acquisition or disposition of such property are capital expenditures." *Id*. at 576 (citing *Spangler v. Comm'r*, 323 F2d 913, 921 (CA 9th Cir 1963); *United States v. St. Joe Paper Co*., 284 F2d 430, 432 (CA 5th Cir 1960)) (emphasis added). Business real property is excluded from the definition of "capital assets." IRC § 1221(a)(2).

Plaintiff lived in the SafeJourney home/kennel, and filed for a business use of home deduction. For that reason, the court finds that Plaintiff acquired the house as a personal residence, from which Plaintiff would operate a dog boarding business. The SafeJourney home is a capital asset. An email from Plaintiff's attorney, Reeves, indicated that Plaintiff sought his services to "put[] the world on formal notice of [his] claim to an interest in the real property." Plaintiff's legal fees were incurred in the acquisition of the SafeJourney home/kennel, a capital asset. Plaintiff's legal fees are a capital expenditure and therefore are not deductible.

2.      *Professional fees*

As evidence of professional fees, Plaintiff submitted SafeJourney's bank account statement, as well as a PayPal account reflecting various payments. Two major expenses were for web domain registration and Elance. For the domain registrations, the court is unable to

verify which, if any, are ordinary and necessary in carrying on SafeJourney. The only domain name that could be related to Plaintiff's business is SafeJourneyPetsitting.com; the invoice for that domain name states that the amount paid was refunded in whole or in part. Plaintiff testified that he used Elance for "all these projects" including marketing, website development, art, and campaigning. Again, the court cannot ascertain if those fees were used for appropriate business uses. In general, expenses paid using a business bank account are not automatically business related; a taxpayer must describe, with sufficient specificity, the type and amount of the expense, as well as how that expense is ordinary and necessary in the carrying on of an active trade or business. Plaintiff failed to do so and did not meet his burden of proof in regard to any claimed professional fees.

D.    *Travel expenses*

Plaintiff reported a number of travel expenses related to franchising SafeJourney. Franchising is neither ordinary nor necessary to carry on a pet-sitting or pet-boarding business. Franchising is a separable trade or business from the pet-boarding or pet-sitting aspects of SafeJourney. *See Bailey v. Comm'r*, TC Summ Op 2007-54, WL 987797 at *5 (2007) (discussing how "petitioner was not actively engaged in the trade or business of the retail aspect" of a cafe, but "was actively engaged in the trade or business of selling franchises * * *.") Additionally, Plaintiff's testimony as to whether or not he traveled for business was unreliable, and thus raised general doubts about the travel expenses. Because the travel expenses were not ordinary and necessary to an active trade or business, and because the evidence was insufficient, court denies Plaintiff's claimed travel expense deduction.

/ / /

/ / /

E.    *SnuggleKitties*

Finally, Plaintiff claims a deduction for the expenses of purchasing SnuggleKitties. Capital expenditures include the "acquisition of assets that constitute a trade or business[.]" Treas Reg § 1.263(a)-5(a)(1). In addition, the term "intangible" includes customer lists. Treas Reg § 1.263(a)-4(c)(1)(xi). Plaintiff purchased SnuggleKitties in April 2007, including "the name of the business, current registrations, advertising accounts, memberships, website, domain, hosting and other internet-related items." The only other evidence Plaintiff submitted related to SnuggleKitties was a client list. Plaintiff equated purchasing SnuggleKitties to purchasing SnuggleKitties' customer list. Plaintiff's expense is not a deductible business expense.

## III.  CONCLUSION

After careful review of the evidence and testimony, the court finds that Plaintiff failed to meet the record requirements of IRC section 274(d), thus his claim relating to automobile expenses is denied. Plaintiff's expenses relating to the purchase option, legal fees, and SnuggleKitties are capital expenditures and are disallowed under IRC section 263. Plaintiff's claims relating to travel and professional expenses are denied as he did not carry his burden of proving that they were ordinary and necessary business expenses. Plaintiff is allowed to deduct $195 for business related animal permit fees. Finally, the court finds that Plaintiff is entitled to a rent deduction in the amount of $16,429 for business use of the home/kennel. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's claimed rent deduction in the amount of $16,429 for business use of home/kennel expenses is allowed.

IT IS FURTHER DECIDED that Plaintiff's claimed deduction in the amount of $195 for animal permit fees is allowed.

/ / /

IT IS FURTHER DECIDED that Plaintiff's claimed deductions for automobile expenses, the purchase option, legal and professional fees, travel, the acquisition of SnuggleKitties, contract labor, and meals and entertainment are denied.

Dated this ____ day of November 2012.

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Presiding Magistrate Jill A. Tanner on November 19, 2012. The court filed and entered this Decision on November 19, 2012.*