T.C. Summary Opinion 2018-17

UNITED STATES TAX COURT

SHANE HAVENER AND AMY E. COSTA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4506-16S.                               Filed April 4, 2018.

Shane Havener and Amy E. Costa, pro sese.

<u>Patrick F. Gallagher</u>, for respondent.

SUMMARY OPINION

PANUTHOS, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, subsequent section references are to the
(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated January 26, 2016, respondent determined a deficiency of $9,565 in petitioners' 2013 Federal income tax and a section 6662(a) accuracy-related penalty of $1,913.

After concessions,[2] the issue for decision is whether petitioners are entitled to deduct mileage and travel expenses related to Mr. Havener's activity remodeling a house.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioners resided in Massachusetts when the petition was timely filed.

---

[1](...continued)
Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round monetary amounts to the nearest dollar.

[2]Respondent conceded the sec. 6662(a) accuracy-related penalty. Petitioners conceded that (1) they are not entitled to deduct "other" expenses of $6,311 on their Schedule C, Profit or Loss From Business, and (2) they overstated the mileage claimed on their Schedule C, as we will discuss in further detail infra note 4. Respondent concedes that substantiation is not in issue.

Mr. Havener (sometimes hereinafter petitioner) worked in a number of positions, including computer consultant, school teacher, and operator of an auto repair painting business, before retiring sometime around 2007. Petitioner grew restless in his retirement and sought a project that could occupy his time. In late 2011 or 2012 petitioners purchased a house in Salem, New York (Salem house), for $30,000 with the intent that Mr. Havener would remodel it and sell it for a profit. The Salem house is approximately 250 miles from petitioners' residence in Pembroke, Massachusetts (Pembroke residence).

At the time of purchase the Salem house was "uninhabitable" and required extensive repairs, including installing a well, repairing or replacing the collapsed septic tank, adding central heat, replacing windows, adding insulation, and upgrading electrical wiring. Petitioner, a "handyman at heart", performed most of the work himself, with the exception of outsourcing a few tasks such as installing a well and hiring "a kid to hold the other end of the board" on occasion. Petitioner also built a front porch and landscaped the yard. Petitioners paid for all supplies and labor with personal funds.

During 2013 petitioner traveled to and worked on the Salem house during the workweek. Trips to the Salem house generally lasted between three and five days. Petitioner would return to the Pembroke residence on weekends. During

2013 Ms. Costa worked as a sales manager, and petitioner scheduled his trips to the Salem house to accommodate her work schedule.[3] Petitioner was not employed during 2013, nor did he work on any activities other than remodeling the Salem house. It does not appear that Ms. Costa spent any time working on the Salem house.

Petitioner owned three vehicles, a 2012 Dodge Grand Caravan (Caravan), a 2011 Dodge Ram 1500 (Ram), and a BMW motorcycle. Petitioner sometimes drove to the Salem house, in the Caravan or the Ram, making 42 round trips and driving a total of 25,145 miles in 2013. Petitioner also drove 41 miles to have the Ram inspected in 2013. Petitioner kept the BMW motorcycle at the Salem house and he often drove it to local hardware and other stores to purchase supplies and/or tools, driving a total of 2,073 miles for such trips in 2013.

Petitioner maintained mileage logs for his three vehicles, recording miles relating to the Salem house remodeling activity. He also kept copies of toll receipts for an E-Z pass transponder used to drive on the toll roads between the Salem house and the Pembroke residence and service invoices for the Ram and the Caravan.

---

[3]Petitioner testified that he came home to take care of the family dog. While not entirely clear, it appears that Ms. Costa may have worked on the weekends.

Petitioner also owned a Piper Warrior airplane. As an alternative to driving he would occasionally fly his airplane for his weekly trips to the Salem house. Petitioner drove to an airport near the Pembroke residence, flew to an airport near the Salem house, and then drove to the Salem house. In 2013 petitioner drove a total of 71 miles between the Pembroke residence and a nearby airport and the Salem house and a nearby airport and expended $2,566 to operate his airplane for these trips.

Petitioners timely filed a 2013 Form 1040, U.S. Individual Income Tax Return. Petitioners reported Ms. Costa's taxable wage or salary income of $236,679 and Mr. Havener's taxable distributions from an individual retirement account and pension totaling $67,912 and taxable Social Security benefits of $11,271. The sole activity reported on the attached Schedule C was the Salem house remodeling activity under the name Shane Enterprises. Petitioners reported zero gross receipts and claimed expense deductions totaling $39,520, including $2,566 for "travel" expenses and $18,453 for "car and truck" expenses. Petitioners reported 19,580 miles driven in the Caravan and 12,638 miles driven in the Ram, a total of 32,218 miles relating to the Salem house activity, and calculated the car and truck expenses using the standard business mileage rate for

2013.[4] The $39,520 in deductions claimed resulted in a reported Schedule C loss of $39,520, which offset petitioners' taxable wage and other income reported on the 2013 income tax return. Petitioners' 2013 Form 1040 reported tax of $54,428, withholding of $52,910, and tax due of $1,518.

In the notice of deficiency respondent made adjustments to the expense deductions claimed on petitioners' Schedule C as follows:

| Expenses | Amount | Adjustment in notice of deficiency |
|---|---|---|
| Car and truck [mileage] | $18,453 | Disallowed in full |
| Contract labor | 3,120 | No adjustment |
| Insurance (other than health) | 200 | No adjustment |
| Repairs and maintenance | 6,311 | No adjustment |
| Taxes and licenses | 802 | No adjustment |
| Travel [airplane operation] | 2,566 | Disallowed in full |
| Utilities | 1,757 | No adjustment |
| Other--misc. material for renovation | 6,311 | Disallowed in full[1] |
| Total | 39,520 | |

[1]As previously indicated, petitioners conceded this adjustment.

_____

[4]The standard business mileage rate of 56.5 cents per mile for 2013 is set forth in Notice 2012-72, sec. 2, 2012-50 I.R.B., 673, 673. The Court notes that 32,218 miles × 56.5 cents per mile = $18,203, but petitioners reported car and truck expenses totaling $18,453. As previously indicated, petitioners conceded that they overstated their mileage on their 2013 Form 1040.

The notice of deficiency reflected the following:

> Thank you for your correspondence dated 12/4/15.
>
> Based on the information you have submitted, our determination has remained unchanged. There is no indication that you have carried on a business under IRC 162 in this year. The expenses were related to a 'rehab of a home'. There is no indication per your return or previous returns of any profit motive. Your expenses may be considered as part of an investment upon the sale of the home.

Petitioners timely filed a petition in which they assert that they should be able to deduct the reported expenses because respondent had previously allowed all of the Schedule C deductions for Shane Enterprises for taxable years 2011 and 2012. At the time of trial petitioners still owned the Salem house and indicated that it was not ready to be listed for sale as Mr. Havener continued to complete some cosmetic work.

## Discussion

Petitioners assert that (1) the Salem house remodeling activity was Mr. Havener's trade or business during the year in issue and (2) he drove a total of 27,330 miles while working on that activity in 2013.[5] Petitioners seek to deduct (1) $2,566 in total travel expenses paid to fly the airplane between the Salem

---

[5] 25,145 miles between the Salem house and the Pembroke residence + 71 miles to airports near the Salem house and the Pembroke residence + 41 miles to have the Ram inspected + 2,073 miles between the Salem house and various hardware and other stores = 27,330 miles.

house and the Pembroke residence during the year in issue and (2) $15,441[6] in mileage for 2013. Respondent asserts that (1) Mr. Havener was not engaged in a trade or business, (2) the claimed expenses are capital expenditures, and (3) the claimed mileage and travel expenses are nondeductible, personal expenses.[7]

I.    Burden of Proof

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are exceptions to the norms of capitalization. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Income tax deductions and credits are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any deduction or credit claimed. Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers must comply with specific requirements for any deductions

---

[6]27,330 miles × 56.5 cents per mile = $15,441.

[7]While respondent's explanations of his theories of disallowance have been somewhat confusing and would appear to affect all of the expense deductions claimed on the Schedule C, respondent did not seek a further disallowance or assert an increased deficiency for 2013. Accordingly, we resolve only those adjustments determined in the notice of deficiency.

claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; New Colonial Ice Co. v. Helvering, 292 U.S. at 440.

Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners did not allege or otherwise show that section 7491(a) applies. See sec. 7491(a)(2)(A) and (B). Therefore, petitioners bear the burden of proof. See Rule 142(a).

II.     Capital Expenditures vs. Current Deductions

Taxpayers may deduct ordinary and necessary expenses paid or incurred during the year (1) in carrying on a trade or business and (2) for the production or collection of income or for the maintenance of property held for the production of income. See secs. 162, 212(1) and (2). However, no deduction is allowed for amounts "paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate." Sec. 263(a)(1); see also sec. 1.162-1(b)(2), Income Tax Regs. Such amounts instead must be capitalized. See sec. 1.263(a)-3, Income Tax Regs. Capital expenditures "are added to the basis of the capital asset with respect to which they are incurred, and are taken into account for tax purposes either through depreciation or by reducing the capital gain (or increasing the loss) when the asset is sold." Woodward v. Commissioner, 397 U.S. 572, 574-575 (1970); see also INDOPCO, Inc. v.

<u>Commissioner</u>, 503 U.S. at 83-84. It is a factual determination whether an expense is a deductible repair or an expenditure that must be capitalized. <u>Gibson & Assocs., Inc. v. Commissioner</u>, 136 T.C. 195, 233 (2011).

A capital asset is defined by section 1221(a) as any "property held by the taxpayer", but under section 1221(a)(1) a capital asset does not include "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business". The purpose of this exception is to differentiate between gain derived from the everyday operations of a business and gain derived from assets that have appreciated in value over a substantial period. <u>Malat v. Riddell</u>, 383 U.S. 569, 572 (1966). The question of whether property is held primarily for sale to customers in the ordinary course of a taxpayer's business ordinarily requires a factual analysis. <u>Pritchett v. Commissioner</u>, 63 T.C. 149, 162 (1974).

Facts showing that the taxpayer (1) operated a trade or business <u>and</u> (2) held the property in question primarily for sale as part of that trade or business are required for a determination that the property in question is not a capital asset. <u>See</u> sec. 1221(a)(1). To determine whether a particular property is held for sale to customers in the ordinary course of the taxpayer's trade or business, courts have considered the following factors: (1) the taxpayer's purpose in acquiring the property; (2) the purpose for which the property was subsequently held; (3) the

taxpayer's everyday business and the relationship of the income from the property to the taxpayer's total income; (4) the frequency, continuity, and substantiality of sales of property; (5) the extent of developing and improving the property to increase the sale revenue; (6) the extent to which the taxpayer used advertising, promotion, or other activities to increase sales; (7) the use of a business office for the sale of property; (8) the character and degree of supervision or control the taxpayer exercised over any representative selling the property; and (9) the time and effort the taxpayer habitually devoted to sales of property. United States v. Winthrop, 417 F.2d 905, 910-911 (5th Cir. 1969); see also Cottle v. Commissioner, 89 T.C. 467, 487 (1987). Although these factors may aid the finder of fact in determining, on the entire record, the taxpayer's primary purpose for holding property, they have no independent significance and individual comment on each factor is not necessary or required. Cottle v. Commissioner, 89 T.C. at 487-489.

The Code does not define the term "trade or business". Whether a taxpayer's activities constitute the carrying on of a trade or business requires an examination of the facts and circumstances of each case. Commissioner v. Groetzinger, 480 U.S. 23, 36 (1987). The management of personal investments,

no matter how extensive, is not a "trade or business." Whipple v. Commissioner, 373 U.S. 193, 200 (1963).

Petitioner testified that he wanted to work on the Salem house because he was "going stir crazy being retired" and that "I'm retired and on a fixed income * * * [t]he money that I've invested into this project has come out of my life savings * * * I've been putting money into it. There's no money coming out of it. It's not a job. I don't get any money until I sell the house."

Although petitioner provided records to verify his mileage and travel expenses, there is no other evidence in the record indicating that he conducted the Salem house remodeling activity as a trade or business. For example, petitioner asserted that he paid expenses for the Salem house remodeling activity with a specific credit card, but he did not assert nor does the record reflect that he kept other books and records or that he conducted the activity in a businesslike manner. Petitioner did not maintain an office for the Salem house remodeling activity. He paid for all the supplies used and work performed on remodeling the Salem house with petitioners' personal funds. Additionally, petitioners' income consisted mainly of Ms. Costa's wage or salary income and Mr. Havener's retirement income, and they did not receive any income from the Salem house before, during, or after the year in issue. Petitioners have not asserted nor does the record reflect

that they received income from any other real estate properties.  See United States v. Winthrop, 417 F.2d at 910-911; Cottle v. Commissioner, 89 T.C. at 487.

Facts indicating that a taxpayer engages in regular (rather than isolated or sporadic) sales of property support a finding that the taxpayer is engaged in a trade or business.  Evans v. Commissioner, T.C. Memo. 2016-7, at *26; see, e.g., Ayling v. Commissioner, 32 T.C. 704, 709-710 (1959) (13 sales over four years did not establish frequency of sales characteristic of a business).  The frequency and substantiality of sales are especially probative "because the presence of frequent sales ordinarily belies the contention that property is being held 'for investment' rather than 'for sale.'"  Suburban Realty Co. v. United States, 615 F.2d 171, 178 (5th Cir. 1980).

Petitioners have not asserted nor does the record reflect that they acquired and sold any properties before purchasing the Salem house.  Additionally, on the basis of this record it does not appear that petitioners purchased any other properties after purchasing the Salem house.  Thus, it does not appear that petitioners sold any properties.  See Suburban Realty Co., 615 F.2d at 178; Ayling v. Commissioner, 32 T.C. at 709-710; Evans v. Commissioner, at *26.  Petitioners' lack of sales over several years is not characteristic of a business.

On the basis of this record, we conclude that petitioner was not engaged in a trade or business. Instead, the Salem house remodeling activity was at best an investment activity. See Commissioner v. Groetzinger, 480 U.S. at 36; Whipple v. Commissioner, 373 U.S. at 200. We therefore sustain respondent's determination that the house was a capital asset.

In the notice of deficiency respondent determined that "[y]our expenses may be considered as part of an investment upon the sale of the home." Capital expenditures are those that (1) create or improve a separate and distinct asset, (2) produce a significant future benefit, or (3) are incurred in connection with the acquisition of a capital asset. Lychuk v. Commissioner, 116 T.C. 374, 385-386 (2001). Only those expenditures that are made to restore property to a sound state or to mend it, with the purpose of keeping the property in an ordinarily efficient operating condition, may be deducted. Ill. Merchs. Tr. Co. v. Commissioner, 4 B.T.A. 103, 106 (1926). On the other hand, expenditures for replacements, alterations, improvements, or additions which prolong a property's life, increase its value, or make it adaptable to a different use are treated as additions to capital. Id.; Niv v. Commissioner, T.C. Memo. 2013-82, at *19.

On the basis of this record, the various improvements petitioner made to the Salem house, a capital asset, were a part of a plan of capital rehabilitation or

improvement. He purchased a house that was considered "uninhabitable" and made a number of improvements to make the property habitable and to increase its value for eventual resale. The various replacements and additions, such as installing a well and adding insulation and central heat, added to the property's value and extended its life. Thus, all expenses paid or incurred as part of this plan of capital rehabilitation or improvement are eligible for treatment only as capital expenditures. Lychuk v. Commissioner, 116 T.C. at 385-386; Ill. Merchs. Tr. Co. v. Commissioner, 4 B.T.A. at 106; Niv v. Commissioner, at *19.

Therefore, petitioners cannot currently deduct any of the expenses paid or incurred in taxable year 2013 as part of the Salem house remodeling activity. Instead, those expenses are eligible for treatment as capital expenditures under section 263(a)(1). See INDOPCO, Inc. v. Commissioner, 503 U.S. at 83-84; Woodward v. Commissioner, 397 U.S. at 574-575.

III. Conclusion

For the reasons stated above, the Court sustains respondent's determination that petitioners may not deduct the claimed expenses for 2013.[8] Because

---

[8]Since we conclude that petitioners may not deduct the reported expenses under either sec. 162 or sec. 212, we need not and do not address respondent's assertion that the mileage and travel expenses are also nondeductible, personal expenses.

petitioners are not entitled to deduct any of these expenses, the Salem house remodeling activity should not have been reported on a Schedule C.

As a final matter, petitioners contend that they should be entitled to deduct the reported expenses because they were permitted to deduct similar expenses for prior years. Each tax year stands on its own and must be separately considered. The Commissioner is not bound for any given year to allow a deduction permitted for a prior year. See United States v. Skelly Oil Co., 394 U.S. 678, 684 (1969); Pekar v. Commissioner, 113 T.C. 158, 166 (1999).

We have considered the parties' other arguments, and to the extent not discussed herein, we find those arguments are moot, irrelevant, or without merit.

To reflect the foregoing and respondent's concession of the section 6662(a) penalty,

Decision will be entered for respondent as to the deficiency and for petitioners as to the accuracy-related penalty under section 6662(a).